# BURNHAM et al., Appellants, v. BOYD et al.

### Division One, February 19, 1902.

1. **Fraudulent Conveyance:** SETTING ASIDE: PLEADING. In a suit in equity to set aside a deed on the ground of fraud, it is not sufficient to allege that the deed was fraudulent, or that it was for the purpose of hindering and delaying creditors, or that it was suffered to be used for that purpose. Unless such characterization is accompanied by a statement of facts constituting the fraud, the pleading amounts to nothing.

2. ———: PREFERRED CREDITORS: KNOWLEDGE OF UNRECORDED DEED. Knowledge by a preferred creditor that an indorser of the firm's notes was secured by an unrecorded mortgage on the lands of a member of the firm, does not make fraudulent a deed of trust conveying the lands to such preferred creditor as security for his debt, the security not being out of proportion to the amount of the debt due him.

3. ———: ———: EXTENSIONS OF NOTES: DELAY. An agreement in writing with the mortgagor to extend for two years the time of payment of the notes secured by the deed of trust to the preferred creditor on the farm of a member of the firm, on conditions that the interest be promptly paid and the improvements be kept up, being supported by no new consideration, did not prevent other creditors from paying off the notes and being subrogated to the right of the preferred creditor, and was no such "delay" as the statute contemplates.

4. ———: ———: RECORDING AT NIGHT. The execution of a deed of preference at one o'clock Monday morning and the arousing of the recorder at four in order that the same might be filed for record, unaccompanied by any other facts indicating fraud, do not justify the setting of the deed aside.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

AFFIRMED.

*Ellis, Cook & Ellis,* and *Karnes, New, Hall & Krauthoff* for appellants.

(1) J. J. Sitton's agreement with Boyd & Company to keep deeds to him off record, was fraudulent as against plaintiffs, and the bank's deeds of trust on realty were connected therewith, grew out thereof, and were tainted with said fraud. Buck v. Bank, 128 Mo. 141; Hafner v. Irwin, 23 N. Car. 490; Meding v. Roe, 30 Atl. 587; Decourcey v. Little, 19 N. J. Eq. 115; Bank v. Doran, 109 Mo. 40; Blennerhassett v. Sherman, 105 U. S. 100; Cluett v. Brown, 2 Ohio 266; In re Pund (Ohio), Prob. R. 281; Jewett v. Sundback, 5 S. Dak. 111, 58 N. W. 20; Paper Co. v. Press Co., 67 Wis. 101, 30 N. W. 298. (2) The agreement for extensions of the notes secured by the deeds of trust to Massey had the effect of hindering and delaying creditors. The effect of that agreement was to tie up the real estate conveyed by the deeds of trust for two years. During that time the creditors of Boyd & Company could do nothing. They could not redeem the property for the deeds of trust. The legal effect of the deeds of trust was to hinder and delay said creditors. 14 Ency. of Law (2 Ed.), 392, 408; Burgert v. Borchert, 59 Mo. 80; Railroad v. Shirley, 24 S. W. 809; Crow v. Beardsley, 68 Mo. 435; Dougherty v. Cooper, 77 Mo. 528; State v. Nauert, 2 Mo. App. 295; Bigelow v. Stringer, 40 Mo. 195; Bank v. Martin, 96 Tenn. 3, 33 S. W. 565; Woodburn v. Mosher, 9 Barb. (N. Y.) 255.

*Benj. U. Massey* for respondents.

(1) "No rule of equity pleading is better settled than that which declares that every material fact which it is necessary for a complainant to prove to establish his right to the relief he asks, must be alleged in the premises of his bill with reasonable fullness and particularity." "A party can no more succeed upon a case proved, but not alleged, than upon a case alleged, but not proved." Beach, Modern Equity Practice, secs. 95-99; Phelps v. Elliott, 35 Fed. Rep. 455; Brokaw v.

Brokaw, 41 N. J. Eq. 215. (2) An insolvent debtor, or one in failing circumstances, has a right, with an honest view to pay his debts, to convey all his property to one creditor and leave others wholly unpaid. And a creditor may accept all, this property, even though other creditors are hindered and delayed in the collection of their debts, or defeated altogether. Schroeder v. Bobbett, 108 Mo. 289; Ames v. Gilmore, 59 Mo. 537; State to use v. Distillery Co., 20 Mo. App. 21; Schroeder v. Mason, 25 Mo. App. 190. (3) J. J. Sitton's agreement with Boyd to keep deeds off record was not fraudulent as between the bank and these plaintiffs. There was no connection between the deeds of trust made by Boyd to the Central bank and the deed of warranty made by Boyd to Sitton to secure Sitton against any liability by reason of his indorsements for Boyd & Company. This last-mentioned deed is not before the court in this case. In fact, it was out of existence before the institution of this suit. The bank was not a party to that deed, had nothing to do with inducing Boyd to make it, had no control over it after it was made, could not have compelled Sitton to file it for record, nor have prevented him from filing it if he had so desired. (4) There was no agreement for the extension of the notes secured by the deeds of trust to Massey that was binding upon the respondents here or upon any other creditors of Boyd & Company, or binding even upon the bank itself. If this instrument had any force and effect, even as an agreement with the bank, not being recorded, it was evidently of no binding force or effect as against other creditors of Boyd. The recorded deeds of trust are the only instruments of writing between Boyd and the bank of which plaintiff or other creditors had any notice, or by which they are bound. And it is not contended that these deeds are void upon their face, void at law, because of any recitals they contain. It did not stand in the way of the plaintiffs in this suit, paying the debt to the bank and taking all the security the bank held and realizing on that security at once. This paper, this agreement to extend

time of payment of said notes, is not the obstacle that hindered and delayed plaintiffs in the collection of their debt from Boyd & Company.

VALLIANT, J.—This is a suit in equity to set aside three deeds of trust given by defendant Boyd to secure certain indebtedness to defendant, the Central National Bank of Springfield. The deeds convey to a trustee, for this purpose, certain lands in Howell and Oregon counties. The plaintiffs are creditors of the firm, of which Boyd is a member, and had, before filing this suit, brought suits against the firm on the debts due them respectively, and had sued out writs of attachment and attached the lands covered by these deeds of trust. The petition charges that the deeds were executed for the purpose of hindering and delaying the creditors of Boyd and the bank knew it and that since the execution of the deed the bank has allowed them to be used to cover up the property of Boyd and hinder his creditors and has allowed him to use them to coerce his creditors into making unfair and unconscionable settlements. The only averment in the petition as of a fact to sustain the charge of fraud, is that the pretended indebtedness which the deeds purport to have been executed to secure is fictitious and fraudulent. The answer denied all the allegations of fraud and fictitious indebtedness. The trial in the circuit court resulted in a finding and judgment for the defendants and the plaintiffs appeal.

There was really no evidence to sustain the averment that the debt to the bank or any part of it was fictitious and therefore the bill should have been dismissed for that reason. The allegations in the petition to the effect that the deeds were made by Boyd to hinder and delay his creditors, and that the bank allowed him to cover up his property by them and coerce his creditors into unfair settlements are mere charges without specifications and present, in a suit of this kind, no triable issue.

Burnham v. Boyd.

In a suit in equity to set aside a deed on the ground of fraud it is not sufficient to say in the petition that the deed was fraudulent, or that it was for the purpose of hindering and delaying creditors or that it was suffered to be used for that purpose. To say that a deed is fraudulent or that it was executed or used for a fraudulent purpose is merely to characterize it and unless such characterization is accompanied with a statement of the facts that are supposed to constitute the fraud it amounts to nothing in pleading.

The evidence took a wider range than the pleadings in this case authorized, and it is upon points brought out in the evidence only, that the assignment of errors is founded.

It appeared in evidence that one J. J. Sitton, who was the father of one of the members of the firm of Boyd & Company, was indorser for the firm on a large part of the firm's paper held by the bank, and that a year or more before the deeds of trust in question were executed, Boyd had conveyed these lands to Sitton to secure him for his indorsements. Sitton withheld his deed from record and the evidence showed that he did so pursuant to an understanding with Boyd & Company that the deed would not be recorded unless the financial conditions of the firm made it necessary for Sitton's security. Counsel for appellant think the evidence shows that the bank was informed of this secret agreement to keep the deed off the record. The evidence on this point, to which the counsel refer in their statement, is in the testimony of the two Sittons, father and son. The father's testimony was:

"Q. When did you first talk with the bank, or any representative of the defendant, about your being liable on those notes? A. Not until a few days before the assignment. Q. The first talk you had with them? A. Yes, sir; no, sir, I had a talk with them once before that, in August prior. Q. In August, 1897? A. Yes, sir; I think I did. Q. Did you talk over the whole matter with them at that time? A. Yes, sir. Q. Did you tell them you were secured? A. Yes, sir."

The son testified: "Q. You did not disclose to the wholesale houses at any time that your real estate had been deeded to your father did you? A. No, sir. Q. You never told a single creditor of that fact? A. No. Q. You did not tell the bank even, did you? A. Yes. Q. Do you testify that you told the bank that, Mr. McDaniel here? A. Yes, sir. Q. When did you tell him? A. I told him that at the time. Q. The time he signed the paper, your father signed the paper? A. Yes, sir. Q. At the time he deeded it over? A. Yes, sir. Q. Your father and you had an agreement to keep it off the record? A. Yes, sir. Q. And did you tell Mr. McDaniel about that? A. I don't know about that."

We do not think that in support of a charge of fraud anything more can be made out of that evidence, than that the bank was informed that Sitton was secured by a deed to the land. But even if the bank did know that the deed was being kept off the record it was a matter in which it had no concern, and over which it had no control. Just before the execution of the deeds of trust in question Sitton reconveyed the lands to Boyd for the purpose of enabling him to thus secure the bank. On the same day these deeds of trust were executed, Boyd & Company made a chattel deed of trust covering their entire stock of goods for the benefit of a large number of creditors, including this bank, and preferring the bank, providing first for the payment of a note due the bank not covered by the other deeds of trust. Prior to that time Boyd & Company had given the bank certain stocks as collateral for their notes it held. So that the bank was preferred above all other creditors upon all the available assets of the firm. But the security given was not out of proportion to the amount of the debt due the bank. Up to within a few days of the execution of the deeds of trust in suit, the bank people believed the firm to be in good condition. The members of the firm so represented its condition, and stated that their commercial rating was

$120,000. The amount owing the bank at this time was about $35,400, of which about $24,400 was covered by the deeds of trust in suit, the land being worth about $20,000 and previously incumbered for about $5,000. The stock of goods sold under the chattel mortgage for somewhat over $4,000 which reduced the bank's debt that much. The collaterals previously given to the bank were not out of proportion to the debt of the bank not covered by the deeds of trust.

It was also shown in evidence that shortly after the execution of the deeds of trust in suit, the bank gave Boyd & Company a written promise to extend the notes covered by the deeds of trust from time to time for two years on condition that the interest should be promptly paid, that the farms be kept up in good condition, not suffered to run down, and the taxes promptly paid. If that fact is what the plaintiffs had in mind when they charged in general terms in their petition that the deeds of trust were made to delay the creditors of Boyd & Company and that the bank has since permitted the deeds to be used for that purpose, they should have stated the fact in their petition so that issue could have been joined on it. But no such issue was tendered.

The evidence, however, does not show that the deeds of trust were executed upon any such condition. It shows that the subject of extensions was mentioned and although no such agreement was made at the time, yet Boyd & Company trusted that the bank would give them time and the bank expected to do so. The memorandum given by the bank afterwards evidenced a mere voluntary indulgence, which did not affect the security and was supported by no consideration, the conditions expressed being only a performance of obligations already existing. It was no legal obstacle in the way of any other creditor who might have chosen to pay the bank's debt doing so and being subrogated to its rights under the deeds of trust. [Harburg v. Kumpf, 151 Mo. 16.]

The unusual hour at which the deeds were executed, and

the haste with which they were filed for record, are mentioned as indications of fraud. It seems that after the bank became uneasy about its debt the cashier went to Thayer, which is the town where Boyd & Company were doing business, to look into their affairs, and get the debt secured. Several days were consumed in examinations of property and discussing the situation. The terms were reached on Sunday, but the parties waited until one o'clock Monday morning, to execute the deeds, and as soon as they were delivered McDaniel, the cashier, started for Alton, the county seat of Oregon county, with the deed to the land in that county, and upon arriving there aroused the clerk at four o'clock in the morning and filed the deed for record at that hour, and immediatey started to return to Thayer. The Howell county deed was filed at eight o'clock the same morning. Unaccompanied by any other fact indicating fraud we can see no element of fraud in that conduct. Under the pleadings and evidence the circuit court could have reached no other conclusion than it did.

The judgment is affirmed. All concur.