# BARBER ASPHALT PAVING COMPANY v. FIELD et al., Appellants.

**In Banc, April 25, 1905.**

1. **STARE DECISIS: Property Rights.** Where contracts have been made upon the faith of the decisions of the Supreme Court, full recognition of the rule of *stare decisis* should be observed in later decisions, and the conclusions reached in those decisions accepted as the law governing and controlling such subsequent transactions.

2. **STREET PAVEMENT: Kinds of Material: Asphalt.** The designation of "Trinidad Lake Asphalt" as one of the materials from which property-owners may select the material they wish to be used in the paving of a street, and "Trinidad, Bermudez, California or any other asphalt equally as good as those designated" as another material, are designations of "kinds of material." The fact that the name of the place where it is produced is used to describe the asphalt does not render its designation as a "kind of material" a non-compliance with an ordinance requiring the selection to be made "from not less than two kinds of material to be designated by the board of public works." And where the property-owners are by such designations given the opportunity to select asphalt and other kinds of material, such as vitrified brick, or sandstone blocks, or gravel, the designations of the "kinds of material" are not illegal.

3. ———: ———: **Interstate Commerce.** The designation by municipal authorities of asphalt as "Trinidad Lake asphalt" is not violative of the acts of Congress against unlawful restraints of trade and monopolies, nor of the provisions of the Constitution in reference to commerce among the States.

4. ———: ———: **By Whom Selected.** The municipal authorities of Kansas City, acting in pursuance to the charter provisions, may designate the material with which a street is to be improved.

5. ———: ———: **Fraud: Pleading.** It is essential to a valid defense of fraud to a suit on a taxbill, charging that the munici-

pal authorities who selected the material to be used in paving a street were illegally influenced by lobbyists, that the acts which constituted the fraud be pleaded. The mere statement that a certain person was employed by the contracting company to act as its agent and lobbyist, upon a large salary, to procure contracts for street paving, and that he was a man of large and controlling influence in primaries and conventions of the leading political parties, and spent his time and money in the election of members of the council and mayors and in the appointment of the boards of public works, and was paid a large commission for procuring the contract in question, is not such a statement of fraud as constitutes a defense to a suit on the taxbill, and, therefore, the plaintiff was not called upon to reply to it.

6. ——: ——: ——: ——: **Illegal Influence: Conclusion of Law: Demurrer.** An allegation that a contract for paving a street was secured by undue and illegal influence of the contractor over the municipal authorities is not a statement of fact, but of a mere conclusion of law, and the contractor is not required to join issue upon such allegation, but it is subject to demurrer; nor is the allegation admitted by the demurrer, for a demurrer admits only facts well pleaded.

Appeal from Jackson Circuit Court.—*Hon. John W. Henry,* Judge.

AFFIRMED.

*R. H. Field* for appellants.

(1)    The designation of material by the board of public works extended to the residents owning a majority in front feet of the abutting lands, the right and opportunity to select (1) "Trinidad Lake asphalt;" (2) "Bermudez, California, Trinidad or any other asphalt equally as good as those designated;" i. e., to select the asphalt by place of its existence or origin, and not otherwise. It did not in form or in effect extend to such owners a right or opportunity to select asphalt as a kind of material for the pavement. This designation of asphalt did not follow strictly, nor at all, the Kan-

sas City charter provision authorizing the board of public works to designate "kinds of materials," for paving "a business street," and was therefore *ultra vires* and void. Charter, last proviso of sec. 2, art. 9; City to use v. Eddy, 123 Mo. 546; Kansas City v. Swope, 79 Mo. 448; Ruggles v. Collier, 43 Mo. 376; St. Louis v. Clemens, 43 Mo. 404; City of Wellston v. Morgan, 59 Ohio St. 157. (2) The third count of the answer adopts the allegations of the first count therein. Besides what is noted in preceding point, the first count of the answer alleges the specifications of detail 3 of asphalt pavement, according to which the pavement was required to be made; this detail provides for "a Trinidad Lake Asphalt" surface, one and one-half inches thick, upon a bituminous concrete binder course one and one-half inches thick, to be laid on a concrete foundation, etc. These allegations, besides showing a violation of the provision in section 2 of article 9, also show a violation of section 12 of article 17, of the Kansas City charter, requiring contracts for such work to be let to the lowest and best bidder. Schoenberg v. Field, 95 Mo. App. 250; Fishburn v. Chicago, 171 Ill. 338; Rudersheimer v. Mayor, 52 La. Ann. 2091; Inge v. Board of Public Works, 135 Ala. 187; People ex rel. v. Gleason, 121 N. Y. 635; Hardware Co. v. Erb, 54 Ark. 650. (3) The fourth count of the answer adopts the allegations of the first and third counts thereof. The other allegations of the fourth count of the answer are, in effect, that the designation, selection and specification of Trinidad Lake Asphalt by the Kansas City officials and resident owners of abutting lands respectively for the street pavement in question, was made for the sole purpose of excluding any competition for the work and to secure the contract therefor to the respondent paving company. Such action was *ultra vires* and fraudulent, and therefore void. Atlanta v. Stein, 111 Ga. 789; Boon v. Utica, 5 Miscl. (N. Y.) 403; Adams v. Brennan, 177 Ill. 194; Tide Water Co. v. Coster, 18 N. J. Eq. 524;

Elkhart County Lodge v. Cary, 98 Ind. 242; Brown v. Bank, 137 Ind. 668; Brooks v. Cooper, 50 N. J. Eq. 769; Kirkwood v. Meramec Highlands, 94 Mo. App. 637; Railroad v. Railroad, 171 U. S. 48; Central Transportation Co. v. Pullman Co., 139 U. S. 48; Freeport Water Co. v. Freeport City, 180 U. S. 587; Inge v. Board of Public Works, supra; People ex rel. v. Gleason, supra; State v. Neb. Distilling Co., 29 Neb. 700; Bailey v. Master Plumbers, 103 Tenn. 99; Dillon, Munic. Corp. (4 Ed.), sec. 322; Cooley, Const. Lim. (6 Ed.), p. 125, n. 3, and pp. 483-4; Gibbs v. Smith, 115 Mass. 592. (4) The allegations of the fourth count of the answer state acts of legal and actual fraud upon the part of both the Kansas City officials and the respondent Paving Company, sufficient to defeat the municipal proceedings in question, and the court erred in not so holding. Trist v. Child, 21 Wall. 451; Critchfield v. Berumdez Paving Co., 174 Ill. 466; Hayward v. Nordburg Mfg. Co., 85 Fed. 4, 29 U. S. Ct. App. 446; Brooks v. Cooper, 50 N. J. Eq. 772; Boon v. Utica, 5 Miscl. (N. Y.) 403; Veazey v. Allen, 173 N. Y. 359; McMullen v. Hoffman, 174 U. S. 648; Mechem on Agency, sec. 25; Railroad & Tel. Cases v. Board, 85 Fed. 320; Brown v. Bank, 137 Ind. 668. In Missouri a municipal act, even a by-law, is void for the fraud of city officials therein, or for a fraud practiced upon them. Morse v. Westport, 136 Mo. 276; Barber Asphalt Paving Co. v. French, 158 Mo. 547; San Antonio v. State, 54 S. W. 289; Oakland v. Carpenter, 13 Cal. 540; Dillon, Munic. Corp. (4 Ed.), secs. 311, 908, 914; State ex rel. v. Cincinnati Gas Light and C. Co., 18 Ohio St. 301. (5) And equally so for any fraud on the law, as for an intended fraud. Hill v. Swingley, 159 Mo. 50; Boon v. Utica, 5 Miscl. (N. Y.) 403; Hersey v. Board, etc., 37 Wis. 80; Railroad & Tel. Cases v. Board, 85 Fed. 320; Elkhart County Lodge v. Cary, 98 Ind. 242; Brown v. Bank, 137 Ind. 668. A fraud on the law is also equally and always a subject of redress and relief. Schumacker's Estate v. Reel, 61

Mo. 602; Alexander v. Reilfe, 74 Mo. 518. The sum of these allegations is, that in the designation and specification of Trinidad Lake Asphalt for this street pavement, we did not have any exercise of judgment of the Kansas City officials, hence have had no authorized municipal action in such designation and specification. Birdsell v. Clark, 73 N. Y. 73; Boon v. City of Utica, 5 Miscl. (N. Y.) 403; Ricketson v. City, 105 Wis. 605; Schoenberg v. Field, 95 Mo. App. 249; Russell v. St. Louis, 116 Mo. 248; City of Rich Hill v. Donnan, 82 Mo. App. 386; Brooks v. Cooper, 50 N. J. Eq. 761; State v. City of Patterson, 34 N. J. L. 163; Railroad & Tel. Cases v. Board, 85 Fed. 320; Woodstock Iron Co. v. Extension Co., 129 U. S. 658. And such fictitious and unauthorized action on the part of the Kansas City officials deprived appellants of their property without due process of law, and violated section 1 of the fourteenth amendment to Constitution of the United States. Chicago Union Traction Co. v. State Board, 114 Fed. 565; Railroad & Tel. Cases v. Board, supra. The court erred in holding that the fourth count contained no defense to the taxbills sued on; also in refusing to allow appellants to prove the facts contained in the allegations noted in this point. (6) The seventh count in the answer states that the acts aforesaid of the board of public works, the common council and mayor of said city, violate the commerce clause of section 1 of article 8 of the Constitution of the United States. The specification of Trinidad Lake Asphalt for the pavement was a municipal regulation, which, *ex vi termini,* excluded from use and from the market for use in the pavement the like asphalt of all other places. Fishburn v. Chicago, 171 Ill. 338; Diamond v. City of Mankato, 89 Minn. 48; Rudersheimer v. Mayor, 52 La. Ann. 2089. This municipal regulation was, therefore, in restraint of trade with the other foreign nations and with our own States having the like asphalt, and a violation of the commerce clause of section 1 of article 8 of the Con-

stitution of the United States. State ex rel. v. Coler, 166 N. Y. 144; Minnesota v. Barber, 136 U. S. 313; Brimmer v. Rebman, 138 U. S. 78; Voight v. Wright, 141 U. S. 62; Scott v. Donald, 165 U. S. 94; Collins v. New Hampshire, 171 U. S. 30; Higgins v. Lime, 130 Mass. 1; People v. Hawkins, 157 N. Y. 1; Arnold v. Yanders, 56 Ohio St. 417.

*Scarritt, Griffith & Jones* for respondent.

·(1) The municipal authorities of Kansas City acting conformable to the charter may designate the material with which a street shall be paved, although that material be a patented article or a natural product which is controlled by one individual, notwithstanding the charter requires contracts for such work to be let to the lowest and best bidder. Field v. Barber Asphalt Pav. Co., 194 U. S. 618; Swift v. St. Louis, 79 S. W. 172. (2) The general expressions and insinuations relative to lobbying contained in the fourth count of defendants' answer are not sufficiently definite to constitute a cause of action in fraud or an affirmative defense on which issue could be joined. Nagle v. Railroad, 167 Mo. 89; Nichols v. Stevens, 123 Mo. 117. (3) The allegations of the answer do not show an agreement or conspiracy violative of the Sherman Act, or of the commerce clause of the Federal Constitution. Field v. Barber Asphalt Pav. Co., 194 U. S. 618; U. S. v. Knight Co., 156 U. S. 1; Hopkins v. U. S., 171 U. S. 578; Pipe & S. Co. v. U. S., 175 U. S. 211; Anderson v. United States, 171 U. S. 604; United States v. Joint Traffic Assn., 171 U. S. 505; Whitwell v. Tobacco Co., 125 Fed. 545; Phillips v. Cement Co., 125 Fed. 593.

FOX, J.—This is an action begun in the circuit court of Jackson county, Missouri, to enforce the collection of a special taxbill issued by Kansas City in part payment of the contract price of paving Washington street in that city from Ninth street to Tenth street, with an asphalt pavement.

The plaintiff introduced in evidence the taxbill sued on and so made its case. The plaintiff thereupon objected to the introduction of any evidence on the part of the defendants on the ground that the answer, which admitted the execution and delivery of the taxbill sued on, did not allege facts sufficient to constitute a defense to the taxbill. This objection was sustained by the court and its ruling was excepted to by the defendants. The correctness of that ruling presents the sole question now before this court.

The answer of defendants consists of seven counts, and while we deem it unnecessary to reproduce all of them, to fully appreciate this controversy, it is essential, at least, to quote the first count in full. It is as follows:

"Defendants for their answer and defenses to the plaintiff's petition and the special taxbills sued on, submit the following:

"For their defense they state:

"1. That Kansas City, Missouri, is, and at all times named in plaintiff's petition was, a municipal corporation organized and existing by virtue of the special charter framed by it for its own government under section 16 of article 9 of the Constitution of the State of Missouri.

"2. That the special taxbill dated December 20, 1898, sued on and consisting of the four installments thereof copied in plaintiff's petition, was issued to plaintiff in part payment for the paving of Washington street from the north line of Tenth street to the center line of Ninth street in said city, under and pursuant to the proceedings hereinafter recited.

"3. On June 17, 1898, the board of public works of said city unanimously recommended to the common council of said city that Washington street in said city from the north line of Tenth street to the center line of Ninth street be paved as a business street and that payment therefor be made in special taxbills, and in

said recommendation said board designated materials for said paving, from which the resident owners of land fronting on said street pavement were given the right to select, as follows:

" 'Trinidad Lake asphalt on concrete to be laid according to detail "3" of asphalt pavement approved by said board August 11, 1896, and on file in the office of said board.

" 'Bermudez, California, Trinidad, or any other asphalt equally as good as those designated, on concrete to be laid according to detail "F" of asphalt pavement approved by said board October 18, 1892, and on file in the office of said board, so modified, as to allow the use of one and one-half inches of wearing surface and one and one-half inches of binder course.

" 'American bituminous rock on concrete to be laid according to detail "I" of asphalt pavement approved by said board August 11, 1896, and on file in the office of said board.

" 'Vitrified brick, as manufactured by the Diamond Brick & Tile Company, on concrete, to be laid according to detail "I" of brick pavement approved by said board November 26, 1895, and on file in the office of said board, so modified as to allow the use of the Portland cement grout instead of Murphy grout filler as therein specified.

" 'Vitrified brick, as manufactured by the Kansas City Vitrified Brick Company, the Pittsburg, Kansas, Vitrified Brick Company, or any other vitrified brick equally as good as those designated, on concrete to be laid according to detail "4" of brick pavement approved by said board August 11, 1896, and on file in the office of said board.

" 'Granite or sandstone blocks on concrete to be laid according to detail "C" of stone block pavement approved by said board July 19, 1892, and on file in the office of said board.'

"4.  Following said recommendation of the board of public works of Kansas City, Missouri, the common council of said city passed, and the mayor of said city on July 23, 1898, approved, ordinance No. 10074, alleged in plaintiff's petition, and therein ordered the paving of Washington street from the north line of Tenth street to the center line of Ninth street, exclusive of all sidewalks of legally established width and of the spaces legally required to be paved by the street railway company operating street railways upon and across said part of Washington street, as a business street in said city, and that the same be paid for by special taxbills, and setting forth in section 3 thereof the designation of the materials and the manner for doing the work for said street pavement as made by the board of public works in said recommendation of said board; from which designation of materials, said ordinance provided that the residents of said city who owned the majority in front feet of the lands fronting on said part of such street were to have the right to select one kind of the materials so specified for said street pavement, by petition in writing addressed and delivered to the board of public works, and upon their failure to make such selection within ten days after the ordinance No. 10074 had been published for ten days in the newspaper then doing the city printing, that then the board of public works of said city were required to designate the material with which said part of said street should be paved.

"5.  It was further provided and required in said ordinance that, the contract for the work herein authorized shall guarantee that the same shall be constructed with such materials and in such manner that the same shall endure without the need of any repairs for a period of five years from and after its completion and acceptance without further compensation than that provided for in the contract for the first cost of such work and for which the said special taxbills are issued.

"6. Said city ordinance No. 10074 was published in the Kansas City Journal, the newspaper then doing the city printing, on July 30th and 31st and on August 1st, 2d, 3d, 4th, 5th, 6th, 7th, 8th, 9th, and 10th, 1898, but none of the 'detail' specifications referred to in the designation of materials aforesaid as approved and on file in the office of the board of public works, were printed in or with any newspaper publication of said city ordinance.

"7. The record of proceedings of the board of public works of August 19, 1898, states that a 'petition selecting Trinidad Lake asphalt as the material with which Washington street from Ninth street to Tenth street shall be paved as a business street, as provided by ordinance No. 10074, was filed.' And among the files of said board is a petition marked filed by or with said board August 19, 1898, and which petition purports to be a selection of Trinidad Lake asphalt as the material with which said part of said street at a cost of not to exceed $2.25 per square yard shall be paved, with the following clause: 'maintenance ten years,' also added thereto, and the persons whose names are signed thereto are declared by the certificate of the members of the board of public works endorsed thereon, to be owners of a majority in front feet of the lands fronting on Washington street from the north line of Tenth street to the center line of Ninth street owned by residents of said city.

"8. The record of the proceedings of the board of public works of August 26, 1898, states that 'the property-owners on said street having by a petition representing a majority of front feet of real estate owned by residents of Kansas City and fronting on said part of said street, selected Trinidad Lake asphalt to be laid according to detail "3" of asphalt pavement as the material with which said part of such street shall be paved, the board of public works in addition to such selection of material by the property-owners hereby se-

lect Trinidad Lake asphalt to be laid according to detail "3" of asphalt pavement approved October 27, 1896, as the material with which said part of said street shall be paved, the work to be done according to plans. and specifications on file in the office of city engineer.'

"9.   That detail '3' of asphalt pavement aforesaid approved August 11, 1896, also on October 27, 1896, by the board of public works of said city and on file in the office of said board referred to, but not set forth, in said ordinance No. 10074, reads as follows:

" 'Detail 3.   The pavement shall consist of a Trinidad Lake asphalt wearing surface one and one-half (1 1-2) inches thick upon a base of bituminous concrete binder one and one-half (1 1-2) inches thick which base shall be laid upon a concrete foundation.   The concrete foundation already in place shall be cleaned and any defects therein made good, when sufficient. new hydraulic cement concrete or cement mortar shall be laid to bring the concrete surface parallel with and three inches below the finished surface of the pavement. Upon this foundation shall be placed a binder course one and one-half (1 1-2) inches thick and upon this binder course a wearing surface of Trinidad Lake asphalt one and one-half (1 1-2) inches thick.   The binder course and wearing surface to be prepared and laid as specified for detail "1." '

"10.   That detail No. 1 of said board of public works' specifications referred to in above quotation from detail '3' in the preceding paragraph, reads as follows:

" 'Detail 1.   The pavement shall consist of an asphalt wearing surface one and one-half (1 1-2) inches thick laid upon a base of bituminous concrete binder one and one-half (1 1-2) inches thick which base shall be laid upon a hydraulic cement   concrete foundation five inches thick.   The streets shall be excavated to the required depth, all soft or spongy ground shall be re-

moved and refilled with suitable back filling and the entire subgrade thoroughly rolled.

" 'Upon this subgrade shall be placed a layer of hydraulic cement concrete not less than five inches thick when tamped.

" 'Upon this base shall be placed a binder course of bituminous concrete composed of clean broken stone not exceeding one and one-half (1 1-2) inches in their greatest dimension and an asphaltic cement, the parts to be thoroughly heated and mixed by machinery in the proportions of not less than fifteen gallons of asphaltic cement to one cubic yard of broken stone. The binder course shall be spread hot upon the concrete foundation with irons and rakes and immediately rammed and rolled to a uniform thickness of one and one-half inches.

" 'Upon this binder course there shall be placed a wearing surface composed of:

" 'First, refined Trinidad Lake asphalt. Second, heavy petroleum oil. Third, clean fine sand. Fourth, pulverized carbonate of lime.

" 'An asphaltic cement shall be formed by melting and mixing the asphalt and petroleum oil in the proportions by weight of one hundred parts of pure asphalt to from fifteen to twenty parts of petroleum oil. The asphaltic cement thus prepared shall be mixed with the other materials in the following proportions: Asphaltic cement, from twelve to fifteen per cent; sand, from eighty-three to seventy per cent; pulverized carbonite of lime, from five (5) to fifteen per cent. The asphaltic cement and sand shall be heated separately to about three hundred degrees Fah. The carbonate of lime shall be mixed with the hot sand and sufficient asphaltic cement at the required temperature shall be added to effect a perfect mixture. •

" 'The mixing thus prepared shall be spread upon the base at a temperature of about two hundred and

fifty degrees Fah. by the use of hot iron rakes in such a manner as to give a uniform thickness of one and one-half inches when compressed. The pavement shall then be smoothed and compressed by rollers, after which a small amount of cement shall be swept over it and then rolled with a steam roller as long as said roller makes an impression upon the surface.'

"11. That the recommendation of the board of public works and city ordinance aforesaid, each purport to be action under section 2 of article 9 of the charter of Kansas City, Missouri, and as a pavement upon a business street, though none of said part of Washington street was then used or occupied for business purposes.

" 'Wherefore, defendants ask judgment and for their costs.' "

Counsel for appellant does not urge any error as applicable to the second count.

The third count in the answer, by reference, adopts the allegations of the first count, and urges as a defense that the selection of Trinidad Lake asphalt was not only in violation of section 2 of article 9, but also section 12 of article 17 of the Kansas City charter requiring contracts for such work to be let to the lowest and best bidder.

The fourth count of the answer alleges substantially that the respondent Paving Company since 1891 (7 years preceding any suggestion for the work in question) had a monopoly of asphalt street pavement in Kansas City under the Trinidad Lake asphalt specification. That the board of public works, the common council and mayor of Kansas City, and the residents owning a majority in frontage of abutting lands, knew of such monopoly, when they respectively designated, selected and specified Trinidad Lake asphalt for the street pavement in question. That to establish a large asphalt street paving business in said city and prevent competition therein, the respondent Paving Company

employed Hugh J. McGowan of said city as its agent and lobbyist to secure a designation and specification of Trinidad Lake asphalt as the asphalt to be used in street pavements in said city, and to procure for the respondent Paving Company the contracts for asphalt street paving in said city, and agreed to pay him, and did pay him, a large salary and a large commission on each contract for street pavement procured by him for the respondent Paving Company, including the contract for the street pavement in question. That said McGowan was, during all of the period aforesaid, a man of large and controlling influence in party primaries and conventions of the leading political parties; was active and spent his time and money in the nomination and election of members of the common council and mayors of the city, and the appointment of members of the board of public works and was a controlling factor in the acts of such officers. That the said designation, selection and specification of Trinidad Lake asphalt for the pavement in question was made because of the lobbying done by the agents of the Paving Company with the city officials and property-owners aforesaid and because of the undue and illegal influence of the respondent Paving Company, its agents and allies over them.

The fifth count adopts the allegation in the preceding counts and charges that the selection of the Trinidad Lake asphalt was due to and the result of a conspiracy, and was violative of section 1 of the acts of Congress of the United States, entitled, "An act to protect trade and commerce against unlawful restraint and monopolies," approved July 2, 1890.

The sixth count of the answer, after adopting the allegations in the preceding counts, charges that the respondent attempted to monopolize and did monopolize a part of the trade and commerce among the several States and with foreign nations, contrary to section 3 of the act of Congress heretofore referred to.

The seventh count of the answer, after adopting all that is set out in the preceding counts, charges that the acts of the board of public works, the common council and mayor of Kansas City, Missouri, are violative of the commerce clause of section 8, article 1 of the Constitution of the United States.

The trial court, after sustaining the objection to the introduction of any evidence upon the answer filed, defendants refusing or declining to plead further or asking leave to amend their answer, rendered judgment for the plaintiff upon the taxbills in suit. From this judgment defendants prosecute their appeal.

OPINION.

It is manifest from the record in this case that the appellants have with commendable frankness alleged in the first count of their answer in detail every step taken by the municipal authorities in the construction of the work of the street improvement involved in this controversy. It is, therefore, apparent that whatever defenses may be urged to the enforcement of the special taxbills in suit, must arise upon this true and correct statement of the record of the city council and board of public works as detailed in the first count of the answer of the appellants. If the preliminary steps taken by the city in the construction of the work contemplated by the street improvement as shown by the record, as detailed in the first count of the answer by appellants, is violative of any of the provisions of the charter of Kansas City, then such count constitutes a good defense to the cause of action alleged in the petition. If on the other hand the allegations in the answer show a substantial compliance with the provisions of the charter providing for such street improvement, then it states no defense, and the action of the court in sustaining the objection of the plaintiff was proper.

The provisions of the charter applicable to the

class of street improvements involved in this controversy are embraced in the fourth and last proviso of section 2, article 9, of the charter of Kansas City, which are as follows:

"Provided, further, however, that if the board of public works shall unanimously recommend to the common council that any business street, alley, avenue, public highway or part thereof, be paved, repaved, blocked, reblocked, graveled, regraveled, macadamized or remacadamized, and the pavement thereof is to be made in special taxbills, and the common council shall, by ordinance, order such work to be done by a vote of two-thirds of the members-elect of each house of the common council, then such work may be done without any resolution, as hereinbefore provided, and regardless of such remonstrance. When the work shall be so recommended by the board of public works, and so ordered by the common council as last above mentioned, the resident owners of the city who own a majority in front feet of the lands belonging to such residents and fronting on such street, avenue, alley, public highway or part thereof to be improved, shall have the right to select the material with which such street, alley, avenue, public highway or part thereof shall be paved, repaved, blocked, reblocked, graveled, regraveled, macadamized or remacadamized from not less than two kinds of material to be designated by the board of public works, such selection to be made by them within ten days after such ordinance shall have taken effect, and been published for ten days in the newspaper at the time doing the city printing, which selection shall be by petition in writing, addressed and delivered to the board of public works. If such selection be not made within such time, then the board of public works shall designate the material with which such street, alley, avenue, public highway or part thereof shall be improved."

It will be observed that under this charter provis-

ion it is incumbent upon the board to designate not less than two kinds of material which in their judgment would be suitable for the pavement, and then it is further provided that the resident owners of the city who own a majority in front feet of all the land belonging to such residents fronting on the street to be improved, shall have the right to select the material with which such street shall be paved, from two or more kinds of material designated by the board, and if such selection be not made by the property-owners within the time stated then the board shall designate the material with which such street shall be improved.

It is clear, and it is so alleged in the answer of the defendants, that the board of public works on June 17, 1898, recommended certain street improvements upon Washington street in Kansas City, and designated more than two kinds of material with which this street should be paved. It is also apparent that the property-owners qualified by the charter to do so, selected the material for the street improvement, and that the board of public works designated the same material for that purpose that the property-owners had selected, and a pavement of the character so selected was duly contracted for and constructed. And there is no pretense that the work was not done in strict accord with the terms of the contract. All of these facts affirmatively appear in the first count of the answer of the defendants; hence these particular allegations in the answer can afford no defense to this action, for they show a substantial compliance with the provisions of the charter. In fact, it is apparent from the reply brief by appellants now before us that they do not claim that there was any failure to designate more than two kinds of material for the street improvement, but their objection is bottomed entirely upon the designation of a particular kind of asphalt, that is to say, Trinidad Lake asphalt.

The main contention of appellants in respect to

the designation of the material to be used in the construction of the work of the street improvement, is thus sharply stated by counsel in the reply brief: "The point we make on this charter provision is, that it authorized the board of public works to designate 'kinds of material' and not a species of a kind of material, based upon mere locality of the material designated. We do not claim that only asphalt was designated by the board of public works for the resident owners to select for the pavement. Our objection is to the way asphalt was designated; it was so designated by the board of public works as not to extend to the resident owners of abutting lands a right or opportunity to select asphalt as a 'kind of material' for the pavement. The designation of asphalt made by the board of public works gave the resident owners the right and opportunity to select (1) 'Trinidad Lake asphalt;' (2) Bermudez, California, Trinidad, or any other asphalt equally as good as those designated; i. e., to select the asphalt by place of its existence or origin, and not otherwise. The abutting owners were thus forced to select the asphalt of one of the places named by the board of public works, and thereby exclude the same kind of asphalt of the other places named by the board of public works, and of every other place, from coming into competition with the asphalt of the one place selected for the pavement or else to forego the exercise of any preference for an asphalt pavement rather than a brick or stone pavement. And this situation being the inevitable result of the action of the city authorities in the premises, must be presumed to have been intended in the designation of asphalt made by the board of public works."

An analysis of the contention of the appellants just quoted results simply in this, that the board of public works was unauthorized to designate Trinidad Lake asphalt as the kind of material to be used for the street improvement, and that its designation of that

particular kind of material was violative of section 2 of article 9 of the Kansas City charter as quoted herein, as well as section 12 of article 17, which provides, that "all city improvements of whatever kind or character, including the erection of all public buildings, made or to be erected at the expense of the city, and including all work to be paid for in special taxbills, except as in this charter otherwise provided, shall be let by contract to the lowest and best bidder."

The proposition so earnestly and ably presented by counsel for appellant is by no means a new one. It has been in judgment before this court in prior cases involving the same question as is here presented, and responding to the contentions urged in those cases, this court, after a full and careful consideration of this important and sharply-disputed proposition, finally settled it, and we are now unwilling and have no disposition to disturb the conclusions reached upon it. [Verdin v. St. Louis, 131 Mo. 26; Barber Asphalt Paving Co. v. Hunt, 100 Mo. 22; Swift v. St. Louis, 180 Mo. 80.] While the writer of this opinion, as an original proposition, did not fully concur in the views expressed in the majority opinion in Swift v. St. Louis, supra, nor in the conclusions in the cases cited in support of it, yet I feel that where contracts have been made upon the faith of decisions of the highest tribunal in the State, and property rights acquired, there should be a full and proper recognition of the rule of *stare decisis* and the conclusions reached by the courts upon the propositions accepted as the law governing and controlling such transactions.

In this case it fully appears from the allegations in the first count of the answer of the defendants, that the board of public works designated more than two kinds of material to be used in the construction of the work for the street improvement—one of the kinds of material designated was Trinidad Lake asphalt, and other kinds, such as vitrified brick and gravel or sand-

stone blocks, were also mentioned. The resident own-
ers of property qualified to do so under the charter
provisions referred to, selected from these materials
as designated by the board of public works, Trinidad
Lake asphalt, and this selection was also adopted by
the board of public works.

We shall not undertake in this case to indulge in
a review of all the authorities cited in which the right
of the municipal authorities to make these designa-
tions and selections is challenged, but must be content
with a reference to those cases as heretofore indicated,
which finally settled this proposition. That the munic-
ipal authorities of Kansas City, acting in pursuance to
the charter provisions, may designate the material
with which a street shall be paved, was fully recognized
by the Supreme Court of the United States in Field v.
Barber Asphalt Paving Co., 194 U. S. 618. The law
upon this proposition is nowhere more clearly and
tersely stated than in that case. In discussing the very
question here presented, as to the right of the munici-
pal authorities to select Trinidad Lake asphalt, the
court in that case said: "The right to provide for this
paving was vested by the Missouri statute in the board
of aldermen. The right to select the material for the
paving was vested in that body; they saw fit to choose
Trinidad Lake asphalt for the paving. Their right so
to do, under the charter powers of such cities as West-
port, notwithstanding competitive biddings is thereby
rendered impossible, has been sustained by the Su-
preme Court of Missouri. [Barber Asphalt Paving
Co. v. Hunt, 100 Mo. 22; Warren v. Paving Co., 115 Mo.
572; Verdin v. St. Louis, 131 Mo. 26.] With the wisdom
of this choice the courts have nothing to do." To the
same effect is Swift v. St. Louis, supra. In that case,
GANTT, J., in treating this proposition, said: "This
court approved the Trinidad Lake asphalt specification
in the Verdin case, because the monopoly therein re-
sulted from the ownership of the whole natural supply

of that article.  Can it make any material difference that that supply in this case is the result of a long and persistent effort to produce a uniform cement?  In each case the owner has the only material which the city desires to use.  Having held, as this court has in the Hunt case, 100 Mo. 22, and in the Verdin case, 131 Mo. 26, that the city is not precluded from using the best material merely because it is a patented article or a monopoly which denied competition, how can it be consistently ruled that it cannot use another equally desirable article because only one firm manufactures it?''

It is urged by learned counsel for appellants that the municipal authorities did not designate a kind of material, but only a species of kind based upon mere locality of the material designated.  It may be, by ''ringing the changes on words and phrases,'' that the distinction made by counsel is correct, yet we are unwilling to say that, in the plain and ordinary acceptation of terms, the naming of Trinidad Lake asphalt was not a designation of a ''kind of material.''  That it was the designation of a ''kind of material'' was so treated by the municipal authorities and is fully recognized in the adjudicated cases herein cited.  We repeat, that the allegations in the first count of the answer of appellants show a substantial compliance with the provisions of the Kansas City charter, and therefore constitutes no defense to this action.

What we have said in respect to the first count is equally applicable to the third count of the answer— hence the same conclusions result as to that count, as herein announced as applicable to the first.

As to the fourth count in the answer, we have reproduced substantially the allegations made by the defendants, and after a careful analysis of them, there is no escape from the conclusion that they consist simply of general expressions and insinuations as to wrongdoing, upon which no issue of fact could be joined.  The defense sought to be made by this count in

the answer is in the nature of a charge of fraud, and that the municipal authorities were illegally and improperly influenced, which resulted in the consummation of the contract in dispute for the construction of the work in the street improvement. It is absolutely essential to a valid charge in a defense of this character to plead the acts which constitute the fraud and invalidate the proceeding or transaction. The mere statement as contained in this count, that Hugh J. McGowan was employed by the respondent Paving Company as its agent and lobbyist upon a large salary to procure contracts for asphalt street paving in said city, and that McGowan was a man of large and controlling influence in party primaries and conventions of the leading political parties, and spent his time and money in the election of members of the common council and mayors of the city and the appointment of members of the board of public works, and was a controlling factor in the acts of such officials, is not such a statement of acts which would constitute a fraud as is required, and, therefore, respondent was not called upon to reply to it. The further allegation that the contract was secured by reason of the undue and illegal influence of the respondent Paving Company, its agents and allies over the municipal authorities, is not a statement of a fact, but a mere conclusion, and respondent was not required to join issue upon such a statement.

The business of lobbying as indicated by the charge of the appellants in this count of the answer, is by no means to be commended by this court. Lobbying, which goes to the extent of improperly and illegally influencing the actions of legislative bodies or official acts, is properly condemned by all right thinking people, but in this case we are dealing with a legal proposition, and to afford relief from the results of the acts by municipal authorities, by reason of improper and illegal influences exercised by lobbying, mere general expressions or insinuations do not meet the require-

ments of the law. The party charged with the commission of the fraud has the right to know in advance, by the pleadings, the particular acts constituting that fraud which he is required to meet. In Nagel v. Railroad, 167 Mo. 89, relief was sought in a court of equity upon the ground of fraud; in other words, that the railroad company had corruptly and fraudulently secured from the municipal authorities a franchise to construct a railway along certain streets. In treating this question, VALLIANT, J., speaking for this court, thus clearly and correctly stated the rule: "A mere charge of fraud, without specification of the act or acts which constitute the alleged fraud, amounts to nothing in pleading, and would be stricken out on motion. We have said this so often that it would seem useless to cite authorities to support it. [Bank v. Rohrer, 138 Mo. 369; Goodson v. Goodson, 140 Mo. 206; Burnham v. Boyd, 167 Mo. 185; Wood v. Carpenter, 166 Mo. 465; 9 Enc. Pleading and Practice, p. 683.] The petition charges that the Municipal Assembly was corrupted by bribery, but does not state who was the briber, nor who the bribed. There are three corporations involved, two of which, according to the petition, acquired their interests after the franchise had been granted. Whether it is intended to include them in the charge is not clear; 'their agents, servants and attorneys' designate a large and unknown class; 'the aldermen, councilmen and members of the municipal assembly' covers a large number of officials in general, but points to no one in particular; paying or promising to pay 'stocks, bonds, privileges and large sums of money to vote for said pretended franchise and ordinance' is as vague and uncertain as language could make the charge. There is no statement as of a fact which could be traversed, there is no issue tendered. A demurrer admits only facts well pleaded; it does not admit a mere characterization, which is all there is of the charge of fraud in this petition," It was said in Nichols v. Stevens,

123 Mo. l. c. 117: "That it is necessary to set forth in the petition the facts constituting the fraud pleaded, no one has ever doubted or denied. Logical and legal consistency, therefore, requires that an answer should as necessarily state the constitutive facts of the fraud relied on, as that a petition should do so. This is the view taken by Judge BLISS in his work on Pleadings, where he says: 'In alleging fraud, it will not suffice to say that the party fraudulently procured, or fraudulently induced, or fraudulently did this or that, or that he committed or was guilty of fraud; the facts which constitute the fraud must be stated.' [Code Plead. (2 Ed.), sec, 211.]"

Counsel for appellants insist that the rule announced in Nagel v. Railroad, supra, does not support the action of the court in the case at bar, for the reason that a demurrer was interposed to the pleadings. We are unable to draw any distinction where in the one a demurrer is sustained because there is no cause of action stated, and in the other where there is a refusal on the part of the court to hear proof because there are no facts alleged constituting a cause of action. In the Nagel case it will be noted that it was said that, "Without the allegation of the specific act or acts which constitute the fraud, the pleadings should be stricken out upon motion." The fourth count in defendants' answer fails to state any defense to the cause of action in suit.

It is unnecessary to pursue this subject further. The fifth, sixth, and seventh counts of the answer predicate defenses to this action upon this view of the case: First—That the acts of the municipal authorities was the result of a conspiracy between the respondent and board of public works, and that the designation of the asphalt to be used in the street paving was in restraint of trade and commerce among the several States and with foreign nations, hence was violative of the acts of Congress to protect trade and commerce against un-

lawful restraint and monopolies; and second—that it was violative of the commerce clause of section 1 of article 8 of the Constitution of the United States.

As to the defenses sought to be interposed by the counts last referred to, it is sufficient to say that they were fully met in the case of Field v. Barber Asphalt Paving Co., 194 U. S. 618. It was expressly held in that case that the specification of the kind of asphalt as designated in the case at bar by the municipal authorities of Kansas City, was not violative of the acts of Congress or the provisions of the Constitution referred to in the answer of the defendants. The conclusions of Mr. Justice DAY, applicable to this proposition, are thus clearly stated: "In the present case it may be that the use of this kind of asphalt, under municipal authority conferred by the State, will in a limited degree affect interstate commerce, but it certainly is not one of those direct interferences with the power over and express control of the subject given by the Constitution to Congress. In this day of multiplied means of intercourse between the States there is scarcely any contract which cannot in a limited or remote degree be said to affect interstate commerce. But it is only direct interferences with the freedom of such commerce that bring the case within the exclusive domain of Federal legislation. The attempt to invoke the provisions of the Sherman Act in this case is equally unavailing. The act has been recently considered in the Northern Securities cases, decided at this term, and its construction and the nature of the remedies under it determined. It is not intended to affect contracts which have a remote and indirect bearing upon commerce between the States. [Hopkins v. United States, 171 U. S. 578; Addyston Pipe Co. v. United States, 175 U. S. 211.]"

There was no error in the action of the trial court in sustaining the objection of respondent to the introduction of any testimony upon the allegations con-

tained in the answer and the judgment should be affirmed, and it is so ordered.

All concur, except *Brace, C. J.,* absent.