# DISTRICT OF COLUMBIA *v.* LYON.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 185. Argued and submitted December 20, 1895. — Decided March 2, 1896.

Land in the city of Washington was sold for non-payment of certificates issued by the city goverment for the cost of local improvements, and was bought in by the holder of the certificates for the sum which they

represented. The sale was set aside for defects caused by the negligence of the officers of the city government in failing to make assessments as required by law. The purchaser then sued the District of Columbia, which had succeeded to the city government of Washington, to recover the value of the original certificates. *Held*, that as the work was done in pursuance of a valid contract, of which the city and the District received the benefit, and as the required assessment had not been made, through the failure of the city and the District, the District became liable, and the certificates were valid obligations against it.

THIS was an action of assumpsit to recover from the District of Columbia the sum of $4082.70, with interest from October 5, 1881, and was tried, by stipulation, without a jury, by the Supreme Court of the District of Columbia in general term. Judgment was rendered in plaintiff's favor, March 28, 1892, and thereupon this writ of error was sued out. The opinion of the court by James, J., is reported, 20 D. C. 484.

Under the act of Congress of February 23, 1865, c. 48, 13 Stat. 434, the corporation of Washington had ample power and authority to make local improvements and to levy and collect taxes to pay for the same.

On November 2, 1869, the corporation of Washington passed an act for the improvement in question, as follows:

"Be it enacted, . . . That the mayor may be, and he is hereby, authorized and requested to cause the curbstones to be set and the footways and gutters paved on the north side of P street north, between Sixteenth street west and Rock Creek; the work to be contracted for and executed in the manner and under the superintendence provided by law; and to defray the expenses of said improvement, a special tax, equal to the cost thereof, is hereby imposed and levied on all lots or parts of lots bordering on the line of the improvement; the said tax to be assessed and collected in conformity with the provisions of the act approved October 12, 1865." (Acts 67th Council, c. 236, p. 116.)

The act of October 12, 1865, referred to, extended prior acts of May 23 and 24, 1853, to special improvements thereafter made, and provided that the cost and expense of every local improvement, "unless otherwise provided for in the act or acts ordering the same, shall be levied, assessed, collected, and

paid, and the payment thereof enforced," as provided in those acts. (Webb's Digest, 360–2.)

The act of May 23, 1853, Webb's Digest, 155, provided for proposals for setting curbstones, etc.; petition for the improvement and plan of the property; superintendence by a commissioner of improvements with two assistants appointed from among those interested in the improvement; that the commissioner of improvements should proceed to execute the work "immediately after the expiration of forty days from the passage of any act laying a tax for the purpose of setting the curbstone and paving the footway on any avenue or street, . . . and according to the proper graduation in front of the lot or lots thereby taxed; and it is hereby understood that the said lot or lots shall alone be answerable for the amount taxed for such improvement;" unless the owner should do the work himself, "in which case the tax laid for the purpose shall become released;" that upon the completion of the work the commissioner "shall deposit with the register a statement exhibiting the cost of setting the curbstone and paving the footway in front of each lot or part of lot separately, and the amount of tax to be paid by each proprietor of said lots or parts of lots, and the register shall then, without delay, place in the hands of the collector of taxes a list of the persons chargeable with such tax, together with the amount due by each person; and the collector shall, within ten days after receiving such list, give notice in writing to each proprietor, . . . to pay within thirty days, and on default collect the tax, with ten per centum interest, 'in the same manner as other taxes upon real property are by law collected;' and that the work should be paid for by certificates of stock, commonly known as 'paving stock,' issued by the mayor and given to the contractors, and redeemable from time to time as the taxes were collected."

None of the provisions of the act of May 24, 1853, are important in connection with this case.

The act of June 10, 1867, Webb's Digest, 467, provided for the appointment of a superintendent and inspector of paving of footways, etc., and enacted that "the said superintendent and

inspector shall also be charged with the duty of making all assessments on lots or parts of lots bordering on any street, alley, or avenue, which shall have been paved."

A later act on the subject, that of October 28, 1867, (65th Council, c. 6,) provided " that from and after the passage of this act, all taxes assessed on private property . . . for the laying of foot pavements and gutters, curbing and paving alleys, shall be collected as follows: one fourth of such assessment within thirty days after the service of the notice by the collector of taxes, and the remaining three fourths in three equal annual payments, for which deferred payments, it shall be the duty of the mayor to issue certificates of indebtedness bearing interest at the rate of ten per centum per annum."

By act of Congress of February 21, 1871, c. 62, § 40, 16 Stat. 419, 428, it was provided that " the charters of said cities (Washington and Georgetown) severally . . . shall be continued for the following purposes, to wit:

" For the collection of all sums of money due to said cities respectively; . . . for the enforcement of all contracts made by said cities respectively, and all taxes, heretofore assessed, remaining unpaid; . . . for the collection of all just claims against said cities, respectively; . . . for the enforcement of all legal contracts against said cities, respectively, . . . until the affairs of said cities, respectively, . . . shall have been fully closed;" . . . and (sec. 41) "upon the repeal of the charters of the cities of Washington and Georgetown, the District of Columbia be and is hereby, declared to be the successor of said corporations and all the property of said corporations, and of the county of Washington, shall become vested in the said District of Columbia."

From the agreed statement of facts, supplemented on the hearing below by the addition of a single fact by consent of counsel for both parties, it appeared that one Henry Birch set the curbstone and paved the footway and gutter in front of lots one to twelve inclusive in square 156, under a valid contract, executed in 1870, with the corporation of Washington, covering the improvement in front of other lots as well; that the work was duly completed and accepted on or about

November 17, 1870, and that its cost, to be paid to Birch, was $2054.10, no part of which had ever been collected or paid; that the municipal officers failed to comply with the requirements of law relating to assessment and notice; that the superintendent and inspector of paving and footways withheld the statement of the cost of the work from the register and the assessment from record until November, 1871, at "the sole request and procurement of the owner of said lots, whereby, he, the owner, was enabled to sell and did sell said lots without any record notice of such assessment, to the purchaser," namely, October 2, 1871. In the meantime and after the work was completed, the corporation of Washington had been succeeded by the government of the District of Columbia, and the offices under the corporation of Washington had been abolished, and the superintendent and inspector was without any authority to make the assessment against these lots, yet on or about November, 1871, "the records were erased and altered, whereby an assessment against said lots was interpolated over and above the signatures already made of the mayor, ward commissioner and other officers of the corporation, presumably to make it appear that they had approved the same, when, as a matter of fact, they had not."

It is explained in *Lyon* v. *Alley*, 130 U. S. 177, that the superintendent entered the work under Birch's contract with the proper proportionate charge against each lot as to all other lots except those in question, and that the change in the record was made by an interlineation in red ink, signed by the officer, and reading "Entered Nov. 17, 1870. This work was done at this date, but by request of the owner, not entered until Nov. 1871."

March 9, 1872, the District of Columbia issued and delivered to Birch four certificates of indebtedness against these lots for the cost of the work, signed by the governor and register, and Birch sold and transferred them to plaintiff for value before maturity. The certificates stated that there was due from the corporation of Washington to Birch and his assigns the sums named, bearing interest from November 17, 1871, at ten per cent, being issued under the corporation

ordinance of October 28, 1867, for setting the curbstone and paving the footway in front of the lots in question, and that the principal and interest was to be paid " out of the special tax fund, agreeably to the terms of the above recited act." On June 7, 1874, these lots were advertised for sale by the collector of taxes for non-payment of the assessment or certificates, whereupon the sale was enjoined at the instance of the then owner by a temporary restraining order of the court, but neither Birch nor plaintiff were made parties to said cause and neither of them had any knowledge of the order passed therein. The collector of taxes, upon the service of the temporary injunction, made no entry or memorandum thereof against these lots, but by mistake did so as to the same numbered lots in another square. October 5, 1881, the collector of taxes again advertised the lots for sale and sold them for the non-payment of the assessment or certificates to plaintiff, and there was issued to him, upon his surrendering the certificates, which were cancelled, and paying three dollars in money, twelve tax sale certificates. At this time, to wit, October 5, 1881, plaintiff had no knowledge whatever of the restraining order or any of the proceedings in the case in which it was granted, and " neither he nor his assignor, Birch, were aware of any invalid proceedings connected with said assessment, and said purchase was involuntary on the part of plaintiff and made to protect his interest in said certificates of indebtedness and save the same from sacrifice." The certificates of indebtedness thus surrendered " were computed and accepted as valid by the District of Columbia at said sale at and for the sum of $4079.70, which, with $3 paid in cash, made $4082.70 as the purchase price paid for such lots on October 5, 1881, by this plaintiff."

It further appeared that John B. Alley, having become owner of the lots, filed a bill against plaintiff to set aside the tax sale, and that in February, 1885, the Supreme Court of the District of Columbia granted the relief prayed, 3 Mackey, 456, and that its decree was affirmed on appeal, 130 U. S. 177; and it was agreed that " the assessment was illegally levied, and the collector of taxes was without authority and jurisdic-

tion to sell, and said sale was not made according to law and was void."

Plaintiff first learned of the invalid proceedings connected with said assessment and sale in the early part of 1882, and at once made application to defendant for a return of the certificates of indebtedness and the money accepted by the collector of taxes as the purchase price of said lots, tendering in return the certificates of tax sale, but his application was refused.

And it was stipulated that if the court should be of opinion that plaintiff was legally entitled to recover, it might give judgment in his favor for the amount paid by him at the sale, $4082.70, with interest thereon from October 5, 1881.

*Mr. Sidney T. Thomas* and *Mr. Andrew B. Duvall,* for plaintiff in error, submitted on their brief.

*Mr. Isaac S. Lyon* in person for defendant in error.

Mr. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The Supreme Court of the District of Columbia held that the effect of the applicable acts " was to charge the municipality, not with a direct indebtedness for the work done under its ordinance, but with the duty to work out a payment therefor by seeing to it that the cost should be charged as a lien upon adjoining lots, and by enforcing this lien and collecting the special tax from the lot owners;" that the District " became invested with authority, and was charged with the duty, to secure such liens and collect and pay over to the contractor such taxes, in payment for work done under an ordinance of the city of Washington. This power could have been exercised and this duty could have been performed in the present case at any time before the 2d day of October, 1871, when it was cut off by the sale of the lots in question to an innocent purchaser;" that " if the resource of payment out of the special tax could have been secured by the District,

and was lost by its omission, a duty to pay the contractor would fairly belong to the District, and an issue of certificates of indebtedness to him would not be a void act;" that these certificates were negotiable and were assigned for value to an innocent purchaser; that plaintiff acted in good faith in making the purchase at the tax sale; that the collector did not act as plaintiff's agent for the collection of the certificates, but in the exercise of public functions and for the District, and that as the District had received and retained the proceeds of the transaction, it had treated the sale as made on its account; and, in conclusion, that as the certificates were valid, and between the parties were purchase money, and as the sale gave nothing to the plaintiff, but the District retained and had disabled itself to return the certificates, it was liable for the amount thereof.

We concur in these views. The work was done in pursuance of a valid contract, and the city, and the District, received the benefit thereof. As the city, and then the District, failed to make the required assessments, the District became liable and the certificates of indebtedness were valid obligations. *Memphis* v. *Brown*, 20 Wall. 289, 310, 311; *Hitchcock* v. *Galveston*, 96 U. S. 341, 360, 361; *Chicago* v. *People*, 56 Illinois, 327; *Kearney* v. *Covington*, 1 Met. (Ky.) 339; *Cumming* v. *Mayor*, 11 Paige, 596; *Reilly* v. *Albany*, 112 N. Y. 30; *Fisher* v. *St. Louis*, 44 Missouri, 482; *Commercial Bank* v. *Portland*, 24 Oregon, 188; *Cole* v. *Shreveport*, 41 La. Ann. 839; *Morgan* v. *Dubuque*, 28 Iowa, 575; *Fort Worth City Co.* v. *Smith Bridge Co.*, 151 U. S. 294, 302.

The certificates admitted the indebtedness and postponed payment until the amount thereof could be realized from an assessment, which it turned out the District could not then lawfully make, though it could have been done prior to October 2, 1871; and there is no pretence that the particular means of payment failed through any laches or fault on the part of Birch or the plaintiff. The tax sale was void but the agreed case shows that plaintiff purchased thereat involuntarily and in good faith to protect his interest in the certificates and paid the full amount in these due bills. He was

not bound to take the risk of losing his money because of the invalidity .of the assessment and the want of authority in the officer to sell, an officer not acting for him but for the District, and no adequate reason is perceived for cutting him off from reclaiming his certificates and recovering thereon, in view of this total failure of consideration without fault on his part.

<em>Judgment affirmed.</em>