[No. 2908. May 10, 1926.]

HODGES et al. v. CITY OF ROSWELL et al.

[247 Pac. 310.]

### SYLLABUS BY THE COURT ·

1. Section 3665 et seq. of the 1915 Code, as amended by chapter 152, Laws of 1919, known as the "provisional order" paving law of the state, are not unconstitutional as being violative of the due process provision of the federal and state Constitutions.

2. The question of whether the statute is unconstitutional

---

[1] 12CJ p. 787 n. 96; p. 1258 n. 70; p. 1259 n. 78; 28Cyc p. 1157 n. 87; p. 1158 n. 89, 90. [2] 12CJ p. 780 n. 98; 32CJ p. 43 n. 9; p. 51 n. 96; 28Cyc p. 1253 n. 77. [3] 28Cyc p. 1002 n. 98, 99; p. 1003 n. 1, 2, 3, 4, 5. [4] 28Cyc p. 1038 n. 11. [5] 28Cyc p. 1056 n. 41 New.

because it provides for personal liability of the property owners for the costs of the improvements assessed against their property is not material, where there is no showing that the city is attempting to fix such personal liability.

3. The duty of the city council to determine "the kind and character of such improvements so to be made" is satisfied by a determination that the streets were to be "paved with a permanent · pavement," further reciting in the alternative several kinds of permanent pavement, such determination being followed by · proceedings resulting in fair, competitive bidding by the contractors.

4. The contract for repairs in this case amounts to nothing more than an agreement to make the work what it should have been in the first instance, and is not, therefore, unauthorized.

5. An agreement by the city to collect the paving assessments and apply the proceeds thereof to the payment of paving bonds issued by it is not objectionable, and is authorized by chapter 133, Laws 1923, which ratified and confirmed such bonds theretofore isused.

Appeal from District Court, Chavez County; Brice, Judge.

Suit by M. W. Hodges and others, taxpayers and property owners, against the City of Roswell and others for an injunction. From a decree dismissing plaintiffs' bill, they appeal. Affirmed.

R. D. Bowers, of Hagerstown, Md., for appellants.

H. M. Dow and Tomlinson Fort, both of Roswell, and Downer & Keleher, of Albuquerque, for appellees.

OPINION OF THE COURT

BICKLEY, J. Representing themselves and other property owners and taxpayers in the city of Roswell, the appellants filed suit attacking the validity of certain proceedings had and taken by the city counsel with reference to the improvements of certain streets of said city. The plaintiffs asked for an injunction restraining the city from entering into a contract or proceeding further in any manner with the proposed improvement project, and asked that the city be permanently restrained from making any assessment against property to be affected by the proposed improvement, against issuing certificates to the contractor for the

doing of the work or the issuance of any bonds in lieu of such certificates. The complaint alleges that the city of Roswell adopted a provisional order on May 9, 1922, for the improvement of certain streets; that the city engineer. had filed an estimate of the total cost of the proposed improvements which estimate, together with plans and specifications for the work, were adopted by the city council on June 2, 1922; that on the same day (June 2, 1922) the city council ordered a hearing for property owners to be held on July 3, 1922; that on said July 3, 1922, the council adopted a resolution ordering the improvement to be made in accordance with the plans, specifications, and estimate of the city engineer; that the engineer was directed to advertise for bids for furnishing materials and doing the work. It was further alleged that the city of Roswell had violated some of the provisions of section 3665 et seq. of the 1915 Code, as amended; that the paving procedure adopted pursuant to the staute violated the Fourteenth Amendment of the federal Constitution; that the assessments against the abutting property for cost of the improvement were attempted to be authorized without reference to the benefits which would accrue to the property abutting on the streets; that the owners of abutting property had not been accorded a hearing as to either benefits or damages; that the city of Roswell had agreed to pay for the work and materials in certificates for and in exchange of which certificates the city proposed to issue bonds; that the issuance of such bonds will be ultra vires, because issued without authority, and in violation of section 12 of article 9 of the New Mexico Constitution. A demurrer to the complaint was filed by the defendant, and was overruled by the court. Thereafter the city of Roswell filed an answer to the rule to show cause why an injunction should not be issued, and thereafter the cause came on for hearing. The trial court made findings of fact and conclusions of law, and filed in the cause a memorandum opinion, and entered a decree in favor of the respondent, and dismissed plaintiff's bill. The case is now here on appeal.

[**1**] The first proposition advanced by appellants is that section 3665 et seq. of the 1915 Code, as amended, known as the "provisional order" paving law of the state, are unconstitutional, for the reason that they violate the "due process" provision of the federal and state Constitutions.

It is claimed by appellants that the absence from the statute of a rule of apportionment of the costs of the improvement against the various lots and parcels of land to be affected, and the absence of a provision for a hearing upon the benefits to the property to be assessed for the cost of such improvement, render the statute unconstitutional as aforesaid.

Appellants say that the basic idea in all public improvement special assessments is that the cost of such improvements shall be commensurate with the benefits to the property; that, if the statute fixes the standard to be used in apportioning the cost of the improvement, that is a conclusive determination of benefits to the property. Appellants do not assail the frontage or front-foot rule as a valid method of making the apportionment, providing it is authorized by the Legislature. The "provisional order" method of making street improvements in municipalities is manifested in sections 3665 to 3671, inclusive, of the 1915 Code, as amended by Laws of 1919, c. 152.

These statutees were before this court for consideration in Ellis v. New Mexico Construction Co., 27 N. M. 312, 201 P. 491. The statute were upheld in several particulars, and as to the point here involved we said:

"The next specific attack made by appellants in their complaint against the procedure followed by appellees is that the assessments made against them were in excess of benefits. Section 3, chapter 152, Laws 1919, amending the 1903 paving law (section 5, chapter 42), carried forward into the Code as section 3669, permits the assessments to be made upon the front-foot rule, and it is such method of assessment that appellants complain of, as stated above. The method followed by the city conforms to the statute, and is therefore valid. That it is a constitutional method of assessment this court has already decided. Roswell v. Bateman, 20 N. M. 77, 146 P. 950, L. R. A. 1917D, 365, Ann. Cas. 1918D, 426."

Appellants say that the statement quoted was ill advised because the language of section 3, chapter 152, Laws of 1919, providing for assessment "upon all the frontage of the street to be improved," applies only to intersections. That the Legislature construed the act in the same manner as did the court is indicated by section 1 of chapter 85, Laws of 1921, which provides:

"Section 1. That when, in the opinion of the governing body of any city, town or village, whether incorporated under general or special act, it shall be deemed advisable to construct any sidewalks, paving, grading, sewer, gutter or other improvements in, upon, adjoining, under or above any street, alley or other public way, abutting on land owned by such municipalities, the governing bodies thereof may provide for the whole or any part of the cost of such improvements chargeable against the front footage of municipally owned lands under existing laws by causing to be levied upon all of the taxable property within such municipalities, a special tax which shall not exceed one mill on the dollar for any one year, the proceeds of such tax to go into a special fund to be applicable only to the payment of such cost of sidewalks, paving, grading, sewer, gutter or other improvements above provided for."

No limitation as to the cost of intersections is here made. In addition to this, subsection 80 of section 3564 of the Code, which section defines the general powers of municipalities, provides:

"Eightieth. That municipal corporations may assess for street improvements, such as paving, grading, curbing and other work done and material furnished therefor between sidewalks and opposite sides of said streets, the whole or a portion of the cost of such improvements, upon the lots and land adjoining said streets and especially benefitted thereby, according to the frontage of said lots and lands, whether said frontage be as to width or depth of said lots and land.'

The fact that section 3 of chapter 152 of the Laws of 1919 specifically provided a different method for dealing with lots and parcels of irregular shape or of less than the regular length indicates that the apportionment was to be made by a uniform standard as to lots and parcels of land having regular shapes and sizes.

As we understand the argument of appellants, their proposition cannot be sustained, unless we overrule our former decision in Ellis v. New Mexico Construction

Co., supra. This we are not disposed to do. Much argument might be made to support that decision, but we think this unnecessary. It has stood for more than five years as a controlling decision affecting procedure of vast public importance, and the attack made upon it is not convincing.

The courts will lean against an interpretation that threatens the constitutionality of a statute. Black's Interpretation of Laws (2d Ed.) p. 110; City of Durham v. Durham Public Service Co., 182 N. C. 333, 109 S. E. 42; Anderson v. Ocala, 67 Fla. 204, 64 So. 775, 52 L. R. A. (N. S.) 287; Codlin v. County Com'rs, 9 N. M. 565, 58 P. 499; Territory v. B. & L. Ass'n, 10 N. M. 337, 62 P. 1097; In re Dexter-Greenfield Drainage District, 21 N. M. 286, 154 P. 382; State ex rel. Whittier v. Safford, State Auditor, 28 N. M. 531, 214 P. 759, where we said:

> "It may not be amiss to state at the outset the general rule universally proclaimed that courts hesitate to declare statutes unconstitutional; they are enacted by a coordinate branch of the government, and it is always desired and preferred to give them effect. In doubtful cases their constitutionality is favored, and it is only when they are clearly violative of the Constitution that the courts so construe them. Fletcher v. Peck, 6 Cranch, 87, 3 L. Ed. 162; Ogden v. Saunders, 12 Wheat, 213, 6 L. Ed. 606; Cooley on Constitutional Limitations (7th Ed.) p. 234; State ex rel. v. Marron, 17 N. M. 304, 128 P. 485; State ex rel. v. Sargent, 18 N. M. 131, 134 P. 218."

We conclude that the acts assailed in this case are not unconstitutional.

[2] Appellants' second proposition is that the personal liability clause of the statute is unconstitutional. The trial court found as a fact that the city had not determined to make the cost of the paving a personal liability of the property owner. No exception is taken to this finding, and no complaint is made that it is unsupported by the evidence. We think that question will be material only when the city shall attempt to impose a personal liability upon the property owners. See Page & Jones, Taxation by Assessment, § 1039. The statute confers power upon municipalities to declare assessments to be a personal liability of the owners

abutting on the improvement, but there is no mandate that the governing body of the municipality shall declare such personal liability. Before appellants would be entitled to injunctive relief, they must show that some right they have is about to be improperly invaded to their irreparable injury. This they have not shown. It will be time enough to consider the constitutionality of this personal liability provision when some attempt is made by virtue thereof to impose such a personal liability.

[3] Appellants next urge that the city council failed to comply with the statutory requirement to determine the kind and character of the improvement to be made. They argue that the resolution of the council that the streets should be "paved with a permanent pavement of either concrete, asphaltic concrete on Portland cement concrete foundation, or asphaltic concrete on asphaltic concrete foundation," is not a compliance with the statute.

The trial court, in a memorandum opinion, said as to this proposition.:

"It is contended that section 3668 requires the city council to determine the kind and character of material ·to be used and work to be done to such an extent as to exclude all bids for anything but certain specified materials, that is, to the extent that no alternative specifications will be authorized; the city council having called for four different types of concrete paving. The words of the statute are 'shall determine the. kind and character of such improvements so to be made.' The courts of Indiana particularly are quoted as holding the view contended for by plaintiffs.

"It will be noted that this determination by the city authorities is made after the hearing for property owners, and therefore was not for their benefit or advice. Considering the statute as a whole, this provision requires the city authorities to make such determination of the kind and character of work as would result in fair, competitive bidding by the contractors. These words really add nothing to the statute; as from the fact that bids are required before the letting of the contract, it is necessarily implied that there must be a determination of the kind and character of the improvement and materials used. There are but two cases I can find where the words 'kind' and 'character' have been judicially defined when used in the sense they are employed in this statute; Joost et al. v.

Sullivan et ux., 111 Cal. 286, 43 P. 896; Barber Asphalt Pav. Co. v. Field, 188 Mo. 182, 86 S. W. 860. It will be observed that the statute refers to the 'kind and character of the improvements,' and not to the kind and character of material. Notwithstanding the Indiana courts hold to the contrary, I think the reference to the improvement is not so material as the fact that the kind and character' of improvement, together with the 'kind and character' of material, must be designated with sufficient particularity to advise bidders, irrespective of the use of the words in the statute. In other words, there must be sufficient plans and specifications adopted to secure competitive bids. When this is done the statute is complied with.

"The construction counsel for plaintiff would place on this provision would preclude bidding by persons who otherwise would be able to bid against those who control certain character of paving material. Most authorities seem to conclude that such a construction is too narrow and detrimental to the best interests of the city and property owners. 1 Elliott on Roads and Streets, § 632; Cook v. City of Detroit (by Judge Cooley) 26 Mich. 263; Barber Asphalt Pav. Co. v. Garr, 115 Ky. 334, 73 S. W. 1106; City of Connersville v. Merrill, 14 Ind. App. 303, 42 N. E. 1112; 3 McQuillin on Municipal Corporations, § 1210; 28 Cyc. 1002; Emmert v. City of Elyria, 74 Ohio St. 185, 78 N. E. 269; Jacksonville Ry. Co. v. City of Jacksonville, 114 Ill. 562, 2 N. E. 478; Richardson v. Omaha, 74 Neb. 297, 104 N. W. 172; Ex parte City of Paducah (Ky.) 89 S. W. 302; Mayor v. Flock, 104 Md. 107, 64 A. 702; Schieffelin v. New York, 65 Misc. Rep. 609, 122 N. Y. S. 502; Warren Bros. v. New York, 190 N. Y. 297, 83 N. E. 59.

" 'We are inclined to think that, where plans and specifications have been adopted and are on file for each of several materials or kinds of material, bids may be invited for each and all and there may be, and is likely to be, just as full competition as to each one as if that alone were called for, and that even better competition results, as a whole, and the authorities can better determine what is most advantageous and best by comparison after bids upon all are thus received.' Elliott on Roads and Streets, § 632.

" 'It has been held that, in the absence of express provision, an ordinance determining upon a municipal improvement need not specify the material of which the improvement shall be constructed. But it is usually required by charter or statute that such specifications be made and such a provision is mandatory. It is sufficient to designate the material in general terms, and it is not necessary to state the proportion and quantity of each article that shall be used in the construction of the work. It has also been held that the description of the material may be in the alternative. Reference may be made to specifications that are on file or to a general ordinance.' 28 Cyc. 1002.

"It has been held by good authority (Judge Cooley writing the opinion) that the lowest relative bid is what is required by the, statute, and this may be arrived at notwithstanding specifications for different materials adopted and bids called for thereon. Cook v. City of Detroit, 26 Mich. 263.

"In my judgment, the action of the city was not only within the law, but followed what is believed to be a course very much to the interest of the complainants. The fact that there was some discrepancy between the ordinance and the plans and specifications adopted, I think, is immaterial, as the plans and specifications were the final determination of the board upon which the bids were to be made."

We approve this opinion and decision of the trial court on this point.

[4] The fourth point presented by appellants is that the court erred in holding that the "contractor's guarantee" for repairs was a mere guaranty of work and materials, and that the inclusion thereof in the specification was not an ultra vires act of the city.

The court made the following finding of fact:

"(11) Said bid of the New Mexico Construction Company also provided that it would maintain the pavement to be laid by it for a period of five years, giving bond conditioned that it would make all repairs of said pavement for five years after the date of its acceptance without charge, when repairs thereto might be deemed necessary within the time, by the city engineer, because of imperfections in said work, or material used, the cost of said bond to-with, the sum of $300, to be paid by the city of Roswell out of its general fund; that no part of said cost was included in the contract price assessed against the property owners."

And the following conclusion of law was made upon it:

(7)   That the 'contractor's guarantee' providing for repairs by the contractor for a period of five (5) years, when considered in the light of all the provisions and specifications of the contract, amounts to no more than a guarantee against defective work and materials, and the inclusion thereof in the specifications and contract is not an ultra vires act of the city."

The finding and conclusion were excepted to on the ground that the court put the wrong construction upon the provisions of the specifications, form of contract, and form of proposal adopted by the city.

The contract provides, with respect to such maintenance bond:

"(19)   It is agreed by the parties hereto that the first party shall guarantee all of the work done and performed and materials furnished for the improvements hereinbefore specified for a period of five (5) years from the date of the acceptance thereof, and to execute a maintenance bond signed by the first party as principal and a corporate surety company as surety in the amount of twenty-five per cent. of the contract price hereinbefore specified, the said bond to be conditioned that the first party shall make all of the repairs of said pavement for five years after the date of its acceptance, without charge, when repairs thereto may be deemed necessary within the time by the city engineer because of any imperfection in said work or material used or because of defective workmanship in putting down said material used. Said bond is to be furnished by the contractor upon payment to the contractor of $300 by the city of the general fund of the city of Roswell and without any additional charge or expense to the city of Roswell or any property owners affected by the pavement or improvement, and it is to be executed and delivered to the city engineer for and on behalf of said city of Roswell, it being expressly understood and agreed that the cost and expense of said bond is not included in the amount of the bid for the cost of said improvements."

The successful bidder, the contractor, submitted with its bid the following:

"(1)   This proposal is made upon the understanding that no part of the expense for the five years maintenance bond referred to in the specifications, contract and proposal, is included in our bid for the costs of paving to be assessed against the property owners, but that the city is to pay the same out of its general fund."

From an examination of the record, we see no fault with the finding of fact made by the court. We are also satisfied with the conclusion of law; the general rule being that, when the contract amounts to nothing more than an agreement to make the work what it should have been in the first instance, it is a mere guaranty of the quality of the work, and 'is not unauthorized. See Shank v. Smith, 157 Ind. 401, 61 N. E. 932, 55 L. R. A. 564; 19 R. C. L. 1074; Burns v. Nashville, 142 Tenn. 541, 221 S. W. 828, quoting R. C. L. page 1073, § 359.

Appellants complain that resolution No. 324, adopted

in order to conform the proposed form of contract with the blank form of proposal and amending paragraph 19 of the plans and specifications, and which clarifies the provision with respect to the maintenance bond, was passed by the council after the advertisement for bids, and the night after this action was filed, and only three days before the bids were opened.

The resolution requires the city engineer to furnish a copy thereof to all bidders prior to the time the bids were received and opened. There is no showing that the bidding was affected detrimentally to the property owners or otherwise by the amendment. However, we are of the opinion that regardless of the amendment, the original provisions fairly support the conclusion and decision of the trial court.

Appellants' fifth point and sixth point are based upon the claim that the court erred in holding that the city could collect the assessments at its own expense and apply the proceeds to the payment of paving bonds, and that the court erred in refusing to find that the city intended to issue its general bonds in lieu of paving certificates, and in concluding that the city had authority to issue "paving bonds."

From an examination of the record, we think the court's decision in this respect was proper. It was the understanding of the city authorities and the contractor that the "paving bonds" were not to be general obligations of the city—that the city assumed no further responsibility in the matter than to discharge its trust agreement to take the proper steps to perfect the lien of the assessments, make collection thereof, and apply the proceeds to the payment of the so-called paving bonds. There is no showing of any damage to appellants as a result of this procedure. In fact, it is considered that such a scheme is to the advantage of the property owners. The trial court so regarded it. It is frequently recited in ordinances authorizing such paving bonds that such an arrangement would be greatly to the profit and advantage of the city and to the

property owners, for the reason that said improvement could be constructed at a smaller cost to the property owners, and that said property owners would have a definite time and place for the payment of their assessments and the installments thereof; that such a plan would provide for one central collecting and distributing agency and that the city and property owners would receive more for negotiable coupon bonds issued in convenient denominations than for assignable certificates issued in odd denominations.

[5] The Legislature, by chapter 133 of the Laws of 1923, specifically authorized such bonds to be issued by municipalities, and ratified, approved, and confirmed as valid obligations any bonds theretofore issued by any municipalities of the state for the purpose of paying the costs of such improvements, as though the same were issued under the provisions of that act. We think the city had authority under its express and implied powers to act as trustee to make the collection of the assessments. Under all of these circumstances we think appellants' fifth and sixth points must be ruled against them.

The action of the trial court in dismissing the complaint was proper, and its judgment will be affirmed, and it is so ordered.

PARKER, C. J., and WATSON, J., concur.