H. C. JONES, *Plaintiff in Error,* v. CENTRAL NATIONAL BANK AND TRUST COMPANY, a Corporation, *Defendants in Error.*

148 So. 765.

Division B.

Opinion filed May 18, 1933.

Re-hearing denied June 21, 1933.

*J. Carl Lambdin, W. G. Ramseur* and *B. K. Roberts,* for Plaintiff in Error;

*Cook & Harris,* for Defendant in Error.

Brown, J.—This writ of error was sued out by the plaintiff in the court below to an adverse judgment on defendant's demurrer to plaintiff's declaration.

The defendant was engaged in the general banking business in St. Petersburg, and the plaintiff had been a depositor and customer of the bank for some six (6) years, and had conducted various business transactions by and through the defendant's bank. The plaintiff was the owner of a lot in St. Petersburg, and in the halcyon days of August, 1925, entered into a written contract with W. J. Curn by which the latter agreed to purchase the lot for the sum of One Hundred Thirty-eight Thousand ($138,000.00) Dollars.

The contract provided that Five Thousand Dollars ($5000.00) should be paid in cash, the receipt of which was acknowledged, and Ten Thousand Dollars ($10,000.00) within 30 days, provided abstract showing clear title "is furnished in time to be approved by second party's attorney within that time," Twenty-five Thousand Dollars within 60 days, at which time deed was to be made and mortgage taken for balance, payable in four equal annual installments, with interest. In case of default for the space of 30 days, the plaintiff retained the option to forfeit and terminate the contract and retain all payments made by the purchaser in liquidation of damages sustained; time being made of the essence of the contract. The contract then contained this further provision: "First, parties agree to furnish abstract certified to date as soon as same can be obtained." It would appear from this contract that the ten-thousand-dollar payment to be made at the end of 30 days was conditioned upon the furnishing by the vendor to the vendee of an abstract "showing clear title" in time to be approved by the vendee's attorney within the 30-day period, but the inclusion of the further clause above quoted would indicate that this contract was not to be entirely abrogated by the failure to furnish the abstract within 30 days, though such failure might have the effect of postponing the ten thousand dollar ($10,000.00) payment, and perhaps even the twenty-five thousand dollar ($25,000.00) payment, until the vendor furnished an abstract certified to date, "as soon as the same could be obtained," which, under our previous decisions, would probably mean within a reasonable time under all circumstances.

At the time of entering into this agreement the plaintiff vendor resided in Maine. The sales contract was made on August 14, 1925. On August 22, 1925, the declaration alleges that the plaintiff caused an abstract of title to the

property to be forwarded to the defendant bank, and on August 22, 1925, wrote the defendant a letter stating in substance that W. A. Chandler (a real estate broker in St. Petersburg) had secured a purchaser for the aforesaid property for a consideration of one hundred thirty-eight thousand ($138,000.00) dollars, that the abstract of title to said property was being forwarded to the said defendant by C. B. Pope (the holder of the first mortgage on said property), that he, the said plaintiff, desired the said defendant to act as his agent "in making delivery of said abstract and otherwise carrying out the terms of said contract of sale." The declaration does not allege that the abstract so forwarded showed a clear title, as required by the sale contract. However, it was not for the agent to pass on the sufficiency of the abstract if he agreed to deliver it, but if the abstract did not show a clear title, this might affect the amount of recoverable damages. The declaration alleges that the defendant by its vice-president, in a letter dated August 25, 1925, replied to plaintiff's letter as follows: "We will be pleased to carry out the request contained in your letter of the 22nd, and will await the time when the abstract from Mr. Pope is forwarded to us. We will give this our attention so that it will be well taken care of."

The declaration alleges that the defendant received the abstract on or about August 25, 1925, and it thereupon became the duty of the defendant to exercise ordinary care and reasonable diligence in delivering said abstract in accordance with plaintiff's instructions, and that the said defendant "well knew the terms of said contract requiring the delivery of said abstract to the said W. J. Curn in time to be approved by his attorney on or before September 13, 1925." How or in what manner the defendant became possessed of this knowledge the declaration does not dis-

close, but perhaps the positive averment that the defendant knew the terms of the contract would be sufficient as against demurrer, though on motion for compulsory amendment the court might properly have required the declaration to be amended so as to show that the terms of the contract had not only come to the knowledge of the defendant, but how and when.

The declaration goes on to allege that the defendant failed to exercise ordinary care and reasonable diligence in making delivery of said abstract, and, on the contrary, negligently misplaced said abstract in the files of the bank and carelessly and negligently failed to deliver the abstract to Curn "within the time limit of said contract" although frequent demands were made upon the defendant by Curn for said abstract "during the 30-day period above referred to;" that it became and was the duty of the defendant, in his capacity as agent of the plaintiff, to prepare and deliver a new abstract on property to said Curn; but the defendant negligently failed to have a new abstract prepared. That by reason of such alleged negligence, the abstract was not delivered to Curn in accordance with the contract, by reason whereof Curn repudiated the contract of purchase, although prior thereto, he was ready and willing to consummate the contract in accordance with the terms thereof. "Whereby plaintiff was and has been hitherto not only hindered and prevented from obtaining the purchase price from the said W. J. Curn, but through the negligence of said defendant, as his said agent, plaintiff has lost all of his rights under said contract of sale." This conclusion of the plaintiff is not entirely sustained by the allegation of the facts. If plaintiff was promptly notified of the loss of the abstract and the failure to deliver the same, we are inclined to think that the contract would have allowed him a reasonable time in which to furnish an abstract, in view

of the subsequent provision of the contract above alluded to. However, the declaration does make it plain, that the negligence of the bank caused the purchaser to repudiate his contract (whether he was legally justified in so doing or not), and the declaration further alleges that in spite of his efforts repeatedly made thereafter plaintiff had been unable to find a subsequent purchaser for the property, and that the value of the same had depreciated to such a degree that he has been damaged to the sum of $100,000.00. The declaration does not allege any effort to compel, by appropriate proceedings in equity, specific performance of the sale contract. Plaintiff in his declaration expressly elects to waive his right of action on the contract of employment and brought this as an action on the case, for damages, alleged to have been caused by defendant's negligence.

Such is the declaration to which the demurrer was sustained. The declaration does not allege that defendant bank was directed to collect any portion of the purchase money. Indeed, it seems that the only part of the sale contract which the bank was expressly directed to carry out on behalf of the plaintiff pertained to the delivery of the abstract to the purchaser within the thirty-day period, which is the only portion of the contract mentioned in the body of the declaration, though the contract as a whole was filed and made a part of the declaration by reference. Undoubtedly, under the terms of the contract the plaintiff could not have insisted upon the payment of the ten thousand dollars within the thirty days unless during that period he had delivered an abstract showing clear title to the purchaser in time for same to be approved by the purchaser's attorney within the thirty-day period. Indeed, he promised in the contract to do this, and he alleges that the defendant knew the terms of the contract. While, as above stated, the failure to deliver within the thirty-day period did not

necessarily defeat the contract entirely, it did defeat the right of the plaintiff to demand the payment of the ten thousand dollars at the end of thirty days from the contract date, and, the declaration alleges, it also caused the purchaser to repudiate the contract. Even though it be admitted, for the sake of argument, that the plaintiff could, under the contract as a whole, have still furnished the purchaser with a proper abstract within a reasonable time, and then by suit for specific performance have obtained a decree requiring such purchaser to comply with the contract, it might well be that the plaintiff would have sustained some damage from the failure of the bank to deliver the abstract within the thirty-day period. However, this is assuming something that the declaration does not allege, and that is, that the abstract which was forwarded to the bank, and which it misplaced and failed to deliver, was such an abstract as was required by the contract between the plaintiff and Curn; that is, an abstract showing clear title. The declaration merely alleges that the plaintiff caused an abstract of the title of the property to be forwarded to the bank by the holder of a first mortgage, and that he wrote the bank that this was being done and requested them to deliver said abstract to the purchaser, Curn. Whether this abstract showed a clear title or not, the declaration alleges that the bank's negligent failure to deliver it within the thirty-day period caused the purchaser to repudiate the contract, to plaintiff's damage.

We are therefore of the opinion that the declaration did not wholly fail to state a cause of action and that the court should not have sustained the demurrer. But, as above pointed out, the declaration was subject to motion for compulsory amendment in several particulars.

Defendant in error contends that in view of the fact that the declaration does not show that the bank received nor

was to receive any consideration whatever for its services, the declaration failed to state a cause of action; that there being no consideration, a mere non-feasance or failure to act, as distinguished from a misfeasance, would entail no liability on the part of the bank. It is also contended that there was no violation of instructions by the bank, because the declaration did not expressly allege that the letter of plaintiff to the bank directed the bank to deliver the abstract at any particular time. We think, as against demurrer, that this latter contention is met by the allegation in the declaration that the plaintiff in said letter requested defendant "to act as his agent in making delivery of said abstract and otherwise carrying out the terms of said contract of sale," coupled with the additional averment that the defendant agreed to do this and that it well knew the terms of the contract requiring the delivery of said abstract to Curn in time to be approved by his attorneys on or before the ending of the thirty-day period.

Nor does an absence of any allegation of direct consideration moving to the bank render the declaration bad. We regard the law to be well settled that where the service of an agent is to be gratuitous, he may refuse to enter upon and perform the service without entailing liability at all; and if his default consists in merely not doing a thing which he promised to do, and it be not a case where the law imposes upon him the duty to perform it, the fact that the performance was to be gratuitous and that the promise to perform was entirely without consideration, will furnish a complete defense to claim for damages on account of such default. This, says Mechem, is upon the familiar ground that non-performance of a gratuitous executory contract constitutes no cause of action. But, says the same distinguished text writer, "where, on the other hand, the agent had entered upon the performance of the service, although it be gratui-

tous, it then becomes his duty to conform to the instructions given. If he were not willing to do so, he should have declined to serve; but having entered upon the performance of the service, he must obey instructions, and a failure to do so will subject him to liability for the loss or damage occasioned thereby." Sec. 1258, Meachem on Agency, 2nd Ed. We are inclined to think that by writing the letter agreeing to serve, and accepting delivery to it of the abstract, the bank might justly be regarded as having entered upon the performance of the service.

It is also said in Sec. 1275 of the same standard work:

"It is the duty of every agent, when no other orrangement is made, to bring to the performance of his understanding, and to exercise in such performance, that degree of skill, care and diligence which the nature of the undertaking and the time, place and circumstances of the performance ordinarily and reasonably demand. A failure to do this, whereby the principal naturally and proximately suffers loss or injury, constitutes negligence for which the agent is responsible."

And Sec. 1282 of the same work has some pertinency here. It reads in part as follows:

"But where a person holds himself out to the public as possessing professional, peculiar or competent skill, or offers his services in a profession, occupation or capacity, which from its nature implies the possession of such skill, he will be liable to those who employ or rely upon him in that capacity and upon that supposition, to the same extent as though the services were to be rendered for a reward.

"This principle is of constant application to the cases of attorneys and physicians, but it is not confined to the so-called learned professions * * *.

"Thus if a bank has undertaken the collection of a note or other demand, and through its negligence the claim is

lost, it is no defense that the collection was to be made gratuitously.

"And so one who holds himself out as a banker, and by his circulars advertises himself as dealing in 'choice stocks,' and promises his customers 'careful attention' in all their financial transactions, is required to exercise the skill and knowledge of a banker, engaged in loaning money for himself and for his customers,' notwithstanding the services in the particular case are rendered without compensation."

In this general connection see also 21 R. C. L., Sec. 9, p. 824, 2 C. J. 909, Oxford Lake Line v. First National Bank, 40 Fla. 349, 24 So. 480; Melbourne v. L. & N. R. Co., 88 Alabama 443, 6 So. 762, First National Bank of Birmingham v. First National Bank of Newport, 116 Ala. 520, 22 So. 976.

It is not alleged that this bank, whose name indicates that it possessed trust powers; held itself out to the public as being qualified to and willing to negotiate various business matters concerning deals in real estate, thereby inducing its depositors and customers to fulfill the duties and obligations that arise out of such undertakings. The declaration does allege however, that for six years the plaintiff had been a depositor and customer of the bank, and in the usual course of business had conducted various business actions by and through the defendant bank, and that when he, being in the State of Maine, found it necessary to designate an agent in St. Petersburg, Florida, to carry out the terms of the sales contract on his part to be performed, he wrote the defendants the letter above referred to, by reason of his past business relations with the defendant and relying upon the integrity, honesty and loyalty of the defendant. While the declaration does not allege that any of the previous transactions with the bank were similar to this one, nevertheless it alleges that the bank accepted the agency,

and accepted the abstract which it was instructed to deliver to Curn. We think therefore, in view of the authorities, that the declaration, in spite of the defects above pointed out, *prima facie* at least sets forth the essential elements of a cause of action and that the order of the court below sustaining the demurrer and entering judgment dismissing the cause should be reversed.

There was some effort in the court below, and in this Court, to obtain direct ruling on the question as to whether or not the declaration would permit the recovery of substantial damages or of nominal damages only. Our view is that demurrer is not a proper method of determining what is a proper measure of damages where the declaration sets forth a cause of action entitling the plaintiff to some damages, even though they are merely nominal. Where improper elements of damages are alleged the proper remedy is by motion to strike or to amend, or by objections to testimony, or by requesting proper instructions by the court to the jury, or by excepting to improper instructions. Hildreth v. Western Union Telegraph Co., 56 Fla. 387, 47 So. 820. Fidelity & Deposit Co. v. Aultman, 50 So. 991, 58 Fla. 228. So the measure of *quantum* of damages is not the subject of demurrer, and if a declaration states a case legally entitling plaintiff to recover any damages whatever a demurrer thereto should not be sustained.

Reversed and remanded.

WHITFIELD, P. J., and BUFORD, J., concur.

DAVIS, C. J., and ELLIS and TERRELL, J. J., concur in the opinion and judgment.