### GRAY et al. v. CITY OF SANTA FE, N. M.
### No. 1474.

Circuit Court of Appeals, Tenth Circuit.
March 31, 1937.

Myles P. Tallmadge, of Denver, Colo., for appellants.

C. R. McIntosh, of Santa Fe, N. M. (J. O. Seth, of Santa Fe, N. M., on the brief), for appellee.

Before LEWIS and PHILLIPS, Circuit Judges, and JOHNSON, District Judge.

PHILLIPS, Circuit Judge.

Gray, Godbe, Vasconcells and Luckenbach, hereinafter called plaintiffs, brought this action against the City of Santa Fe to recover damages for breach of contract. The trial court sustained a demurrer to the complaint. Plantiffs elected not to plead further and an order was entered dismissing the action.

Plaintiffs in the first cause of action of their complaint, after setting out the requisite jurisdictional facts, alleged these facts:

On August 15, 1922, the City duly adopted Ordinance No. 401. It confirmed prior proceedings taken in providing for the improvement of certain streets in the City, assessed the cost thereof against the abutting property, and provided that the assessments should become due thirty days after the ordinance became effective but that any property owner might elect to pay his assessment in ten equal installments maturing consecutively on the 23d day of August of the years 1923 to 1932, inclusive, with interest at seven per cent per annum payable semi-annually.

It declared that each assessment should be a lien on the abutting property on which it was levied and provided for a recordation of the lien.

It provided that there should be issued to the contractor assignable certificates evidencing the liability of the abutting property and the owners thereof for the payment of such assessments; that such certificates should bear interest at the rate of seven per cent per annum, payable semi-annually; and that the contractor or his assigns should have the privilege of exchanging such certificates for paving bonds to be issued by the City.

Subsequent to August 15, 1922, the City adopted other ordinances in substantially the same form as Ordinance No. 401 except as to descriptions of abutting property, names of owners thereof, amounts of assessments and dates due.

The total amount of assessments levied by such ordinances was $167,000.00.

On August 15, 1922, the City duly adopted Ordinance No. 402. It referred to the prior proceedings and provided:

"Section 2. That the City of Santa Fe be and it is hereby authorized and empowered to receive, collect and enforce the payment of all the assessments made for the said improvements and all installments thereof and all interest thereon, in the same manner and at the same time or times as the owner or owners of the assignable certificates issued to pay the cost of said improvements might receive, collect or enforce the said payments, and to pay and disburse such payments, the installments thereof and the interest thereon, to

any person or persons lawfully entitled thereto.

"Section 3. That the treasurer of the City of Santa Fe be and he is hereby authorized and empowered, and it shall be his duty to receive and collect all assessments levied to pay the cost of said improvements, the installments thereof and the interest thereon, at the times and in the manner heretofore or hereafter specified, and to pay and disburse such payments to the person or persons lawfully entitled to receive the same, in accordance with the laws of the State of New Mexico and all ordinances and resolutions of said city heretofore or hereafter to be adopted. All moneys received shall be placed in a separate fund to be designated 'Paving Fund,' and shall be used for the purpose of paying the principal and the interest on the paving bonds hereinafter mentioned, and for no other purpose whatsoever.

"Section 4. That if the owner of any parcel of land assessed for the said improvements shall be delinquent in the payment of any assessment, installment or interest due, it shall be the duty of the city treasurer to notify such owner in writing that such delinquency exists, and that, if the amount due is not paid within thirty days after the date of the said notice, the matter will be referred to the city attorney for collection and foreclosure.

"Section 5. If the payment or payments due as specified in the last preceding section is or are not paid within the stated time, it shall be the duty of the city treasurer to refer the matter to the city attorney, whose immediate duty it shall be to enforce and collect the amount due, together with all costs and penalties, by foreclosure, or in any manner which is now or which may be provided by law.

"Section 6. If any property shall be offered for sale for the nonpayment of any assessment, installment thereof or interest thereon, and no person or persons shall bid for said property, then the City of Santa Fe shall have the power and it shall be its duty, to bid for said property and to take and receive in its corporate name any certificates or deeds to the said property, and to sell or dispose of said property for the benefit of the owner or owners of the paving bonds hereinafter specified."

It authorized the City to issue paving bonds payable on or before eleven years from date "the principal and interest of which" should "be paid solely and exclusively from revenues derived from the assessments."

It provided that such bonds should be in denominations of $500.00 each, should be payable in numerical order, and should bear interest at the rate of seven per cent from date, payable semi-annually and evidenced by coupons attached to the bonds.

It provided the form of the bonds which in part read:

"This bond is issued in exchange for a like amount of assignable certificates representing the cost of paving and improving certain streets in said city, in full conformity with the constitution and laws of the State of New Mexico, and the ordinances and resolutions of said city duly adopted and approved prior to the issue hereof.

"This bond is payable solely out of a special fund designated the Santa Fe Paving Fund, containing the receipts derived by the city from special assessments levied to pay for said improvements. And it is hereby certified and recited that for the payment of this bond the city of Santa Fe assumes no obligation whatsoever, except for the creation of said Paving Fund, the collection and enforcement of all special assessments levied to pay for said improvements, the deposit in said fund of all receipts derived from said special assessments, and the payment of this bond out of such receipts in the manner provided by the ordinance under which this bond is issued."

Pursuant to Ordinance No. 402, the City issued and delivered paving bonds in the form provided in such ordinance in the aggregate sum of $167,000.00, in denominations of $500.00 each, numbered 1 to 334, inclusive, and maturing on August 1, 1933. The City has redeemed bonds numbered 1 to 235 inclusive, and has paid the interest on all the bonds to August 1, 1933. It has failed and refused to pay bonds numbered 236 to 334, inclusive, and interest thereon since August 1, 1933.

Plaintiffs are the bona fide joint owners and holders of bonds of such issue numbered 236 to 247, 250, 253 to 274, 278, 281, 286 to 292, 300 to 302, 305 to 308, 319, 320, 323 to 334, being 65 bonds for the aggregate principal sum of $32,500.00.

$49,500.00 of such total issue are outstanding and unpaid. The unpaid assessments amount to $26,630.02. There remains in the paving fund $4,355.57.

None of the original assessments have been set aside, annulled or held void by an order of court.

The City failed, neglected, and refused to collect and enforce the delinquent assessments and provide a fund for the payment of such bonds at maturity.

Plaintiffs further alleged:

"By reason of defendant's failure, neglect and refusal diligently to collect and enforce payment of said delinquent special assessments and provide a fund sufficient for the payment at maturity of said bonds owned and held by plaintiffs, these plaintiffs have been damaged in the sum of $32,500, with interest thereon from the 1st day of August, A. D. 1933."

They prayed for damages in the sum of $32,500.00, with interest from August 1, 1933, and for general relief.

In their second cause of action plaintiffs alleged that the City issued bonds in denominations of $500.00 each, numbered 1 to 310, inclusive, and maturing July 1, 1934, under Ordinance No. 421, which is substantially like Ordinance No. 402; that the City paid and redeemed bonds numbered 1 to 147 and the interest on all of such bonds to July 1, 1934, but has failed and refused to pay bonds numbered 148 to 310 and interest thereon since July 1, 1934; and that plaintiffs are the bona fide joint owners and holders of bonds numbered 156 to 179, 182 to 185, 190 to 203, 206, 212, 213, 224 to 233, 235 to 237, 243, 244, 247, 248, 254, 255, 261, 264. to 281, 283, 287, 290 to 306, being 102 bonds aggregating the principal sum of $51,000.00. They further alleged like breaches and defaults on the part of the City and resulting damage as in the first cause of action and prayed for judgment in the sum of $51,000.00 with interest from July 1, 1934, and for general relief.

The improvements involved were made under authority of sections 90-1212 to 90-1218, inclusive, New Mexico Stat.1929.

These sections provided for the issuance of assignable certificates. They made no provision for the issuance of bonds. They provided no collection agency and the burden of foreclosing delinquent assessments rested on the certificate holders.

Prior to 1923 a practice grew up, which was followed by the City here, of enacting ordinances providing for the issuance of paving bonds in exchange for certificates and providing that the City should collect the assessments, enforce delinquent assessments, and buy in the property in the absence of bidders.

Section 1, c. 133, N.M.Sess.Laws 1923, section 90-1701, N.M.Stat.1929, expressly provided for the issuance of bonds in exchange for certificates and the collection and enforcement of assessments by cities in New Mexico and expressly approved, ratified and confirmed such bonds theretofore issued.

Thus it will be seen that the action of the City in adopting the ordinances for issuance of the bonds and their issuance in the instant case was fully ratified and confirmed. See Hodges v. City of Roswell, 31 N.M. 384, 247 P. 310, 314.

That part of section 90-1701, supra, dealing with the enforcement of delinquent assessments reads as follows:

"In case any such lot or parcel of land so assessed is delinquent in the payment of such assessment or any installment of principal thereof or interest thereon the same shall be sold at the same time and in the same manner as the sale of property in such municipality for delinquent general taxes and at such sale said property shall be bought in by such municipality providing there is no other purchaser therefor. In case the governing body of such municipality shall fail or refuse to cause any lot or parcel of land to be sold for any delinquent assessment or installment thereof or interest thereon, then the holder or holders of any bond or bonds secured by such assessment may foreclose the assessment lien on such delinquent property in the method now provided by statute for the foreclosure of mortgages (on) real estate."

In Hodges v. City of Roswell, supra, the court also held that an agreement on the part of the City to collect the assessments and apply the proceeds in payment of the bonds was valid, saying:

"It was the understanding of the city authorities and the contractor that the 'paving bonds' were not to be general obligations of the city—that the city assumed no further responsibility in the matter than to discharge its trust agreement to take the proper steps to perfect the lien of the assessments, make collection thereof, and apply the proceeds to the payment of the so-called paving bonds. * * * We think the city had authority under its express and implied powers to act as trustee to make the collection of the assessments."

For certain considerations recited in the ordinances, the City expressly agreed to collect the assessments and place the moneys received in a separate fund and disburse them only in payment of the principal of and interest on the bonds; to imme-

diately enforce and collect delinquent assessments, by foreclosure or in any other manner provided by law, and if the property on which such an assessment was delinquent should be offered for sale for nonpayment thereof, and no persons should bid thereon, to bid for such property and take and receive any certificates or deeds to the property in its corporate name and to sell and dispose of the property bid in by it for the benefit of the owner or owners of the paving bonds.

■ The plaintiffs in each cause of action alleged that the City entered into a contract to collect and enforce the assessments therein referred to, the failure and refusal of the City to collect and enforce the assessments, and resulting damages equal to the principal of the bonds with unpaid interest. The demurrer challenged the right to the relief sought. Such a form of challenge was not appropriate. When a complaint otherwise states a good cause of action, it is not demurrable because it alleges the wrong measure of damage or demands relief to which the plaintiff is not entitled,[1] especially where there is a prayer for general relief.[2] The remedy is by motion to strike.[3]

■ But the question presented, argued and disposed of below and presented here is the right of the plaintiffs to recover as damages, the principal of the bonds with interest, and since the plaintiffs have at no time objected to the form of the challenge we proceed to a consideration of that question.

The unpaid assessments and the liens thereof are still subsisting and are valid and enforceable. The liens may be enforced by either of the two methods provided in section 90-1701, supra.

■ It is the duty of the City under the provisions of section 90-1701 and under its contract to collect such assessments and enforce such liens and it may be compelled by mandamus to perform that duty.[4]

By their express terms the bonds are payable only out of the paving fund derived from moneys collected on the assessments and the sole obligation of the City is to create the fund, collect and enforce the assessments, deposit in the fund all proceeds of assessments collected and apply them first in payment of accrued interest and next in payment of the principal of the bonds in numerical order.

■ The City clearly was not primarily liable on the bonds. Indeed an agreement on the part of the City to become primarily liable on the bonds would contravene section 12 of article 9 of the New Mexico Constitution and would be invalid. City of Santa Fe v. First National Bank (N.M.) 65 P.(2d) 857, decided February 17, 1937.

There is much conflict among the adjudicated cases on the question of when a municipality, not primarily liable on certificates or bonds issued to pay the costs of special improvements, becomes liable for the unpaid principal of the certificates or bonds with interest, because of failure to perform its statutory or contractual duties

---

[1] Goldsmith v. Sachs (C.C.Cal.) 17 F. 726, 730; Kenny v. Knight (C.C.Mass.) 119 F. 475; Erie City Iron Works v. Thomas (C.C.N.Y.) 139 F. 995; Backer v. Penn Lubricating Co. (C.C.A. 6) 162 F. 627, 629, 630; Dugan v. Miles (D.C. Md.) 276 F. 401, 404; Dominion Phosphate Co. v. Lang (C.C.A. 5) 278 F. 159, 160; Johnson v. Independent School Dist., 189 Minn. 293, 249 N.W. 177, 179; Wollums v. Mutual Benefit H. & A. Ass'n, 226 Mo.App. 647, 46 S.W.(2d) 259, 264; Hastings-Stout Co. v. J. L. Walker & Co., 162 Miss. 275, 139 So. 622, 624; Calvert v. Anderson, 73 Mont. 551, 236 P. 847; Gourley v. Lookabaugh, 48 Okl. 65, 149 P. 1169, 1171; Fraley v. Wilkinson, 79 Okl. 21, 191 P. 156, 158; Wesley v. Chandler, 152 Okl. 22, 3 P. (2d) 720, 722; Sullivan v. Ashland Light, Power & St. Ry. Co., 156 Wis. 445, 146 N.W. 506, 508.

[2] Backer v. Penn Lubricating Co., supra; Thompson v. Mills, 45 Tex.Civ. App. 642, 101 S.W. 560, 562.

[3] Dominion Phosphate Co. v. Lang, supra; A. Dreher & Co. v. National Surety Co., 174 Ala. 490, 57 So. 34, 36; Gilliland v. Hawkins, 216 Ala. 97, 112 So. 454, 456; Jones v. Central Nat. Bank & T. Co., 110 Fla. 262, 148 So. 765, 768.

[4] Blanchar v. City of Casper (C.C.A. 10) 81 F.(2d) 452, 453; Moreing v. Shields, 28 Cal.App. 513, 152 P. 964, 967; Board of Trustees v. State, 175 Ind. 147, 93 N.E. 851, 852; Smalley v. Yates, 36 Kan. 519, 13 P. 845, 848; State ex rel. Texas Grading Co. v. Buie, 144 La. 39, 80 So. 191, 192; People ex rel. Ready v. Mayor of City of Syracuse, 144 N.Y. 63, 38 N.E. 1006; Peterson v. Lewis, 78 Or. 641, 154 P. 101, 103, 104.

with respect to levying or collecting the special assessments. They are collected in elaborate notes in 38 A.L.R. 1271 and 51 A.L.R. 973.[5] However, we think two general rules may be laid down that find support in respectable authority.

■ Where no assessment has been made but the power to assess still remains, or where an invalid assessment has been made but the power to reassess exists, or where an assessment has not been collected when due but the assessment still subsists and may be collected, the remedy of the certificate holder or bondholder for the lack of diligence on the part of the City officials is mandamus to compel them to assess or reassess and enforce collection.[6]

■ On the other hand where the City is without power to levy a valid assessment or has levied an invalid assessment and is without power to reassess, or has by its neglect of duty, permitted a valid assessment to expire and become uncollectible, the City is liable for breach of duty or contract to pay the debt evidenced by the certificate or bond.[7]

The reason for the first of the above rules is that municipal authorities should not be permitted by mere neglect or refusal to act, to convert a special assessment, certificate or bond into a general obligation of the municipality and thus compel owners of property not directly benefited by the improvement or property owners benefited but who have paid the assessment against their own property, to contribute to the cost of improving the property of one directly benefited who has failed to pay his assessment, when through

mandamus appropriate proceedings may be employed to make the property benefited respond for the cost of the improvement. Powell v. City of Ada (C.C.A.10) 61 F.(2d) 283, 288; Blanchar v. City of Casper (C.C.A.10) 81 F.(2d) 452, 453; Farrell v. City of Chicago, 198 Ill. 558, 65 N.E. 103, 104; Peake v. New Orleans, 139 U.S. 342, 353, 11 S.Ct. 541, 545, 35 L.Ed. 131.

In Peake v. New Orleans, supra, the court quoted with approval, 1 Dillon on Municipal Corporations (4th Ed.) § 482, as follows:

"Why should all be taxed for the failure of the council to do its duty in a case where the contractor has a plain remedy by mandamus to compel the council to make the necessary assessment, and proceed in the collection thereof with the requisite diligence?"

■ Where the owner of an obligation enters into a contract with another to act as agent of the owner in the collection of such obligation and to take certain steps to enforce the obligation and the agent fails and neglects so to do, would the agent be liable to the owner of the obligation for the principal thereof with interest when the owner may still enforce payment of the obligation by the debtor? We think not. It seems to us the same rule should apply here.

We conclude that the assessments being still subsisting and subject to collection by either of the methods provided in section 90-1701, supra, the City's failure in the respects alleged did not render it liable for the full amount of the unpaid bonds and interest.

---

[5] We find no decision on the question by the Supreme Court of New Mexico.

[6] Powell v. City of Ada (C.C.A. 10) 61 F.(2d) 283, 286; Blanchar v. City of Casper (C.C.A. 10) 81 F.(2d) 452, 453; Pontiac v. Talbot Paving Co. (C.C.A. 7) 94 F. 65, 48 L.R.A. 326; Id. (C.C.A.) 96 F. 679; Peake v. New Orleans, 139 U. S. 342, 11 S.Ct. 541, 35 L.Ed. 131; Foster v. Alton, 173 Ill. 587, 51 N.E. 76; Farrell v. City of Chicago, 198 Ill. 558, 65 N.E. 103, 104; City of Alton v. Foster, 207 Ill. 150, 69 N.E. 783, 787–789; City of Greencastle v. Allen, 43 Ind. 347; People ex rel. Ready v. City of Syracuse, 144 N.Y. 63, 38 N.E. 1006; Weston v. City of Syracuse, 158 N.Y. 274, 53 N.E. 12, 15, 43 L.R.A. 678, 70 Am.St.Rep. 472; Henning v. City of Casper (Wyo.) 57 P.(2d) 1264, 1271, 1274.

[7] Powell v. City of Ada (C.C.A. 10) 61 F.(2d) 283, 286; City of McLaughlin, S. D., v. Turgeon (C.C.A. 8) 75 F.(2d) 402, 406, 407; Barber Asphalt Paving Co. v. City of Denver (C.C.A. 8) 72 F. 336, 339; Denny v. City of Spokane (C. C.A. 9) 79 F. 719; Bates County, Missouri, v. Wills (C.C.A. 8) 239 F. 785, 792; District of Columbia v. Lyon, 161 U.S. 200, 16 S.Ct. 450, 40 L.Ed. 670; Grand Lodge, A. O. U. W., v. City of Bottineau, 58 N.D. 740, 227 N.W. 363, 368; Weston v. City of Syracuse, 158 N.Y. 274, 53 N.E. 12, 15, 43 L.R.A. 678, 70 Am.St.Rep. 472; Freese v. City of Pierre, 37 S.D. 433, 158 N.W. 1013, 1016; Coolsaet v. City of Veblen, 55 S.D. 485, 226 N.W. 726, 728, 67 A.L.R. 1499; Price v. City of Scranton, 321 Pa. 504, 184 A. 253, 254.

■ We do not hold that either count of the complaint failed to state a cause of action. We only hold that the facts set out in each do not warrant the recovery of the damages specifically alleged and relief specifically sought. We are of the opinion that each count did state a cause of action for the recovery of such damages as may flow from the breach alleged, such as shrinkage in value during the delay, costs of mandamus or foreclosure proceedings, and other like elements.

■ When regard is had for the precise question decided we think it is apparent the dismissal should have been without prejudice to the bringing of another action for the damages properly recoverable for the alleged breaches of contract.

It is so modified, and as modified, affirmed.